# EXHIBIT C

2019-MISC-Law Offices of Crystal Moroney, P.C.-0001
Received 12/5/19 at 5:42 a.m.



**BEDARD LAW GROUP, P.C.**

JOHN H. BEDARD, JR.
*Licensed Only In GA and TN*

RONALD S. CANTER
OF COUNSEL
*Licensed Only In DC, FL, MD, PA, VA*

MICHAEL K. CHAPMAN
*Licensed Only In GA*

JONATHAN K. AUST
*Licensed Only In GA and NC*

DAVID A. KLEBER
*Licensed Only In GA*

4855 RIVER GREEN PARKWAY
SUITE 310
DULUTH, GEORGIA 30096
678.253.1871
www.bedardlawgroup.com

## PETITION TO SET ASIDE CIVIL INVESTIGATIVE DEMAND DATED NOVEMBER 14, 2019 OR IN THE ALTERNATIVE TO MODIFY SAME

### BY PETITIONER

### LAW OFFICES OF CRYSTAL MORONEY, P.C.

**December 5, 2019**

**Filed This Date Via E-mail**

ExecSec@cfpb.gov
Enforcement@cfpb.gov

Attn: Executive Secretary
Consumer Financial Protection Bureau
1700 G. Street NW
Washington, DC 20552

## PROCEDURAL INTRODUCTION

This petition is made pursuant to Section 1052(f) of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") and 12 C.F.R. 1080.6(e) within 20 days following service of the Civil Investigative Demand dated November 14, 2019 (received on November 18, 2019) hereinafter referred to as the "Second CID."

### Certification of Good Faith Pursuant to 12 C.F.R. §1080.6(e)(1).

The Petitioner respectfully challenges the enforceability of 12 C.F.R. §1080.6 for the reasons described below. Notwithstanding, and without waiving its challenge, the undersigned counsel certifies that he has made a good faith effort to resolve the issues identified herein with the CFPB's enforcement attorney handling this CID, Vanessa Assae-Bille. No agreement was reached and the undersigned was specifically advised that the enforcement attorney did not have authority to set aside the CID notwithstanding any



Executive Secretary
Page **2** of **23**

agreement.  No matters contained in this petition were resolved by agreement.  This petition is made in good faith based on case law which fairly bears upon the issues raised in this petition. The petition is not made for the purpose of delay or with contumacious intent.

### Compliance Period Return Date Pursuant to 12 C.F.R. §1080.6(f).

Petitioner respectfully challenges the enforceability of 12 C.F.R. §1080.6 for the reasons described below.  Notwithstanding, and without waiving its challenge, Petitioner expressly challenges the entirety of the CID.  To the extent any portion of this petition is denied, Petitioner respectfully requests 21 days from the date of service of the order on Petitioner as the new return date for the CID.

### Compliance with 12 C.F.R. §1080.6(c)(3).

Petitioner respectfully challenges the enforceability of 12 C.F.R. §1080.6 for the reasons described below.  Notwithstanding, and without waiving its challenge, Petitioner addresses the requirement to have raised these issues at the meet and confer stage of the process.

12 C.F.R. §1080.6(c)(3) states:

> (3) Petitions.  The Bureau will not consider petitions to set aside or modify a civil investigative demand unless the recipient has meaningfully engaged in the meet and confer process described in this subsection and will consider only issues raised during the meet and confer process.

Petitioner meaningfully participated in the meet and confer process on December 2, 2019, via telephone and with the consent of the Enforcement Attorney.  A representative of Petitioner, Crystal Moroney, participated in the call along with the undersigned and three representatives of the Bureau participated in the call which lasted approximately 71 minutes.  During the call, Petitioner raised objections to numerous provisions of the CID and the parties thereafter engaged in meaningful and productive discussion of each.  No agreement was reached on any subject, save and except the Bureau's commitment to review Petitioner's forthcoming request to modify the CID.  Petitioner has complied with §1080.6(c)(3).



Executive Secretary
Page **3** of **23**

## FACTUAL INTRODUCTION

The Law Offices of Crystal Moroney, P.C. ("Petitioner" or "Law Firm") is a law firm. Crystal Moroney, the firm's majority shareholder, is an attorney licensed to practice law in New York and New Jersey.  The law firm represents clients and provides legal advice on a myriad of topics, including compliance with consumer financial protection laws, evaluating legal claims against third parties (including consumers), bankruptcy process and procedure, and the collection of unpaid debt obligations.

This investigation began with the service of a Civil Investigative Demand on or about June 23, 2017 (the "First CID").  A copy of the First CID is attached hereto as Exhibit A.  The parties conducted a meet and confer pursuant to 12 C.F.R. 1080.6(c) and reached agreement on certain objections to the First CID.  Pursuant to that informal agreement, Petitioner formally requested modification of certain items in the First CID on July 14, 2017.  On July 25, 2017, the Bureau responded to the modification request by extending certain deadlines, narrowing some CID requests, and rejecting certain other modification requests.  Agreement was not reached on an important issue – the application of the New York and New Jersey Rules of Professional Conduct applicable to licensed attorneys, including Rule 1.6.

The Bureau extended certain deadlines to create a rolling production schedule over the following 10 weeks.  By October 2, 2017, the Law Firm provided written responses, supplemental responses, and amended responses to the First CID and produced thousands of pages of documents and data.  The Law Firm did not produce (and expressly withheld) documents and information protected by the attorney-client privilege, the attorney work-product privilege, and all documents and information protected by Rule 1.6 of the New York and New Jersey Rules of Professional Conduct applicable to attorneys.  The Law Firm withheld complete responses to Interrogatory Number 12, Requests for Written Reports Nos. 1-5 and 7, Document Requests Nos. 2, 6, 12, and 14, and Requests for Tangible Things Nos. 1-4 contained in the First CID.

On January 9, 2018, the Bureau informed the Law Firm that "Enforcement staff has recommended enforcement of the CID."  The Bureau invited the Law Firm to reconsider its position on the application of privilege and Rule 1.6 else face legal action.  Six days later, on January 15, 2018, the Law Firm advised the Bureau that its position on both issues had not changed and that, despite the Law Firm's request, no client of the firm consented to releasing its protected information to the Bureau.  As a result, the Law Firm reaffirmed its commitment



Executive Secretary
Page **4** of **23**

to complying with the restraints surrounding disclosure of protected information and documents.  Nothing happened in the following 13 month period.

On February 25, 2019, the Bureau filed a Petition to Enforce Civil Investigative Demand in the United States District Court for the Southern District of New York, Civil Action No.:  7:19-cv-01732-NSR (the "Petition").  The Bureau did not serve the Petition on the Law Firm.  On September 10, 2019, the Honorable Nelson S. Román issued an Order To Show Cause setting a hearing on the Bureau's petition for November 8, 2019 and ordering the Bureau to properly serve the Law Firm with the Petition.  After 7 months of waiting, the Bureau served the Law Firm with the Petition 2 days later, on September 12, 2019.

On October 3, 2019, the Law Firm filed its brief in opposition to the Petition.  The Law Firm's primary challenge to the Petition asserted a constitutional defect in the Bureau's structure, rendering the Bureau without legal authority.  After granting the Bureau's second request for an extension of time to respond to the Law Firm's opposition, the Court ordered the Bureau to respond on or before November 4, 2019, just 4 days before oral argument on the Petition.  On the evening of its deadline, November 4, 2019, and nearly 3 years after the commencement of the Bureau's investigation, the Bureau unilaterally withdrew the First CID and filed a Suggest of Mootness asking the Court to dismiss its own Petition.  Three days later, on November 7, 2019, the Court cancelled the oral argument hearing, denied the Petition as moot, and closed the case.  The Bureau successfully avoided scrutiny of its behavior by the federal court.

Within hours of the Court's order denying the Petition and closing the case, the Bureau announced its intention to serve another CID on the Law Firm.  On November 14, 2019 the Bureau issued another CID (the "Second CID") which was received by the Law Firm on November 18, 2019.  The Second CID, attached hereto as Exhibit B, is virtually identical to the First CID.  The requests contained in the Second CID mirror the requests in the First CID verbatim, save and except some non-substantive wording changes.  This petition asks the Bureau to set aside the Second CID for the reasons that follow.



Executive Secretary
Page **5** of **23**

## ARGUMENT

## I. THE BUREAU'S CONSTITUTIONAL DEFECT PROHIBITS ITS EXERCISE OF ENFORCEMENT AUTHORITY AND THE SECOND CID SHOULD BE SET ASIDE IN ITS ENTIRETY.

### A. The CFPB's Structure Violates Article II Of The Constitution Which Vests Executive Power In The President Of The United States.

This matter concerns the extent and reach of the executive power under Article II of the Constitution. Under this primary law, all federal government power derives from the people. U.S. Const. pmbl. *See, McCulloch v. Maryland,* 17 U .S. (4 Wheat.) 316, 405, 4 L.Ed. 579 (1 819). To prevent tyranny and protect individual liberty, the Framers of the Constitution separated the legislative, executive, and judicial powers of the new national government. The Framers insisted upon accountability for the exercise of executive power by conferring full responsibility for that power in a single person, the President of the United States, who is elected by and accountable to the people. The first 15 words of Article II speak with unmistakable clarity: "The executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. Article II also assigns to the President the exclusive and plenary authority and responsibility to "take Care that the Laws be faithfully executed." *Id.* § 3.

The CFPB was created by Title X of Dodd-Frank as an "independent bureau" within the Federal Reserve System, 12 U .S.C. § 5491(a). Because the law establishing the CFPB insulates it from requisite checks and balances by the Executive and Legislative branches, the Bureau's structure cannot be reconciled with the Constitution's separation of powers principles. For this reason, and as explained in detail below, the Bureau should follow the ruling in *RD Legal* and grant this petition to set aside the Second CID. An unconstitutional federal agency, and the tainted rules and regulations it creates, cannot operate to exert executive power over the People, who did not confer such power on the legislature, but instead conferred it exclusively in the President.



Executive Secretary
Page **6** of **23**

## B. <u>The Dodd-Frank Act Confers Overly Broad Executive Authority On The Director Of The Bureau.</u>

### 1. The Dodd-Frank Act Impermissibly Shields The CFPB's Director From Presidential Oversight And Democratic Accountability.

The Framers "consciously decid[ed] to vest Executive authority in one person rather than several. They did so in order to focus, rather than spread, Executive responsibility thereby facilitating accountability." *Clinton v. Jones,* 520 U.S. 681, 712 (1997) (Breyer, J., concurring). "[I]f any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,* 561 U.S. 477, 492 (2010), *quoting* 1 Annals of Cong. 463 (1789). "Since 1789, the Constitution has been understood to empower the President to keep these officers accountable – by removing them from office, if necessary." *Id.* at 483.

Dodd-Frank violates these bedrock principles by vesting unfettered and wide ranging power in one person – the Director of the CFPB – whom the President may remove only "for inefficiency, neglect of duty, or malfeasance in office." 12 U.S.C. § 549 1(c)(3). Congress also erected impermissible structural features in Dodd-Frank to insulate the Director from the President's control, including: (1) limiting the President's ability to control the CFPB's legislative recommendations, testimony or comments on legislation submitted to Congress ( 12 U.S.C. § 5492(c)(4)); (2) precluding the President from overruling the Director's interpretation of a consumer protection statute where that law is administered by both the Bureau and another agency (12 U.S.C. § 5512(b)(4)); and (3) precluding the Executive branch from exercising any oversight with respect to the Bureau's financial operating plans and forecasts. 12 U.S.C. § 5497(a)(4)(E). Moreover, the Director exercises all this power over a five-year term, one year more than the term of an elected President, which term can be extended indefinitely if the Senate does not confirm a successor. 12 U.S.C. §§ 549 1(c)(I) and (c)(2).

In *Free Enterprise Fund, supra.,* the Supreme Court reaffirmed the principle that Article II of the Constitution forbids Congress from limiting the President's discretionary authority to hold executive officers accountable through removal from office. There, the Supreme Court addressed the structure of the Public Company Accounting Oversight Board ("PCAOB"), a five- member board with "expansive powers to govern [the] entire" securities



industry, whose members could be removed only by the Securities and Exchange Commission - not the President - and only for cause. *Free Enterprise Fund,* at 484-86. The Court observed that the PCAOB presented a "new situation," *id.,* at 483, and that "[p]erhaps the most telling indication of the severe constitutional problem with the PCAOB is the lack of historical precedent for this entity." *Id.* at 505 (internal quotation omitted).  The Court held that this "novel" structure "subverts the President's ability to ensure that the laws are faithfully executed" and therefore is "incompatible with the Constitution's separation of powers." *Id.* at 496 and 498.

The CFPB presents an analogous "novel" structure that lacks historical precedent and that improperly limits the President's discretionary authority to remove subordinate officers. Because the President cannot "take Care that" consumer protection laws "be faithfully executed if he cannot oversee the faithfulness of the officers who execute them," *id.,* at 484 (internal quotation mark omitted), the CFPB's structure is constitutionally flawed.

### 2.     The CFPB Is Unlike Other Independent Agencies That Have Passed Constitutional Muster.

The Supreme Court has recognized only two limited exceptions to the general prohibition against restricting a President 's removal power : (1 ) a multi-member  "body of experts," *Humphrey's Executor v.  United States,* 295 U .S. 602, 624-26 (1935), and (2) certain inferior officers with "limited jurisdiction and tenure," *Morrison v. Olson,* 487 U.S. 654, 691 (1988). Neither exception applies to the CFPB.

**Exception One Does Not Apply**. In *Humphrey's Executor, supra,* the Court addressed the "good cause" removal provision that applies to the members of the Federal Trade Commission, who hold seven-year terms and who cannot be removed by the President except for "inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 620, *citing* 15 U .S.C. § 41. The Court upheld this removal provision on the grounds that the FTC is a "non[-]partisan," multimember group acting in a "quasi[-]judicial and quasi[-]legislative" rather than "purely executive" capacity. *Id.* at 624, 627-29. The Court's conclusion rested not only on the FTC's functions, but also on its features as an "administrative body" comprised of multiple members "called upon to exercise the trained judgment of a bod y of experts." *Id.* at 624 and 628.



Executive Secretary
Page **8** of **23**

In contrast, the CFPB is headed not by a non-executive and non-partisan "body of experts" but by a single, autonomous, partisan Director empowered to enforce nineteen consumer protection laws. Unlike the FTC, the Director is not accountable to a multimember commission, which creates an institutional barrier to unilateral action. *See, Recent Legislation, Dodd-Frank Act Creates the Consumer Financial Protection Bureau,* 124 Harv. L. Rev. 2 123, 2 128 (20 11) ("presence of dissenters" in agency proceedings "provides new information and forces the proponent to articulate a coherent rationale, thus acting as a constraining force"). Little similarity exists between the structure of the CFPB and the structure of the FTC contemplated by the court in *Humphrey's Executor.*

*Structure* protects Liberty. The cumulative *structural* protections built into the FTC comprising appropriations restrictions, a five member commission protected from partisan dominance, the collective expertise of commissioners (and dissenters), and protections against unilateral exercise of executive power gave the *Humphrey's Executor* Court comfort that the legislature had not invaded the executive function and that the Liberty protected by the Constitution's separation of powers remained preserved. These *structural* attributes serve as hallmarks for the protection of Liberty and distinguish the CFPB from the federal agency structure contemplated by *Humphrey's Executor.* For these reasons, *Humphrey's Executor* is distinguishable and does not provide a basis to uphold the provisions of the Dodd-Frank Act that created the Bureau.

**Exception Two Does Not Apply**. In *Morrison, supra,* the Court upheld a statute that permitted an independent counsel to be removed by the Attorney General only for "good cause" because the appointed counsel had "limited jurisdiction and tenure" and "lack[ed] policymaking or significant administrative authority." 487 U.S. at 691. In contrast to this limited role, the Director wields wide-ranging and unchecked executive power to enforce nineteen consumer protection laws (12 U.S.C. § 5481(12)); serves a lengthy five-year term (12 U.S.C. § 549 l (c)( 1 )); and, as this matter illustrates, has significant policymaking authority, including the decision to seek through subpoena power information subject to the "attorney-client privilege ...the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. US.,* 449 U.S. 383, 389 (1981).

The circumstances present in *Morrison* that justify limited restrictions on the President's removal power are not present here and this second exception does not save the structure of the CFPB from constitutional infirmity.



Executive Secretary
Page **9** of **23**

## C. The CFPB's Director Is Not Accountable To Congress Through Appropriations.

The CFPB exercises its regulatory and enforcement powers absent meaningful oversight or control from Congress.  Dodd-Frank authorizes the Director to unilaterally requisition up to 12% of the Federal Reserve System's operating expenses - totaling almost half a billion dollars[1] – without congressional approval. 12 U.S.C. § 5497(a). Congress is also prohibited from reviewing the CFPB's use of these funds. 12 U.S.C. § 5497(a)(2)(C).

Dodd-Frank removed another critical democratic check on potential abuses of power by eliminating congressional appropriations oversight of the CFPB's financial resources. *See,* U.S. Const., art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law.").  In the case of the CFPB, the "power of the purse" – Congress's "ultimate weapon of enforcement is unavailable." *United States v. Richardson,* 4 18 U.S. 166, 178 n. 11  (1974).  This power serves the "fundamental and comprehensive purpose" of assur[ing] that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents." *Office of Personnel Mgmt. v. Richmond,* 496 U.S. 414, 427-28 (1990).

Congress may not abdicate its most important constitutional check against executive power. *See, New York v. United States,* 505 U.S. 144, 182 (1992) (the separation of powers does not depend on "whether or not the encroached-upon branch approves the encroachment"). By insulating the CFPB from congressional appropriations oversight, Congress has impermissibly restrained its ability to hold the Executive branch accountable. This abdication provides an additional reason why the CFPB's structure violates the Constitution's separation of powers principle.

## D.   CFPB's Structure Is Unconstitutional, Rendering The Bureau Without Authority To Enforce The Second CID.

The constitutionality of the CFPB's structure must be examined as a whole, without viewing each particular feature in isolation. "[J]ust because two [or more] structural  features

---

[1] The CFPB's funding was set at $468.2 million for 2019. *See,* https://www.consumerfinance.gov/about-us/budget-strategy/budget-and-performance/ (last accessed December 2, 2019).



Executive Secretary
Page **10** of **23**

raise no constitutional concerns independently does not mean Congress may combine them in a single statute." *Ass'n of Am. Railroads v. U.S. Dep't of Transp.,* 721 F.3d 666, 673 (D.C. Cir. 2013), *vacated on other grounds by Dep't of Transp. v. Ass 'n of Am. R.R .,* US. _, 135 S. Ct. 1225 (2015). Although the Supreme Court has "previously upheld limited  restrictions" on particular checks and balances, the combined elements of the CFPB's "novel structure" – a single Director who may only be removed for cause, who serves a lengthy five-year term, and who establishes his or her own annual budget of almost half a billion dollars without congressional oversight – "does not merely add to the [CFPB's] independence, but transforms it." *Free Enterprise. Fund ,* 561 U.S. at 495-496.

The Director exercises "[a]ll consumer financial protection functions" previously exercised by seven agencies (12 U.S.C. § 5581 (b)), which includes the power to: enforce federal consumer protection laws, pursue actions in federal court, pursue administrative actions (12 U.S.C. §§ 5562-5564), seek a wide range of legal and equitable relief, and exercise rulemaking authority to create law. 12 U.S.C. § 5565(a)(2). The public must be able to "ensure that those who wield[]" power are "accountable to political force and the will of the people." *Freytag v. Comm'r of Internal Revenue,* 50 l U.S. 868, 884 (1991). The CFPB's unprecedented insulation from presidential *and* congressional oversight goes too far in undermining constitutionally required democratic accountability.

Congress intended to create an agency that was "completely independent, with an independently appointed director, an independent budget, and an autonomous rulemaking authority." 156 Cong. Rec. H5239 (2010) (Rep. Maloney). The purpose of Title X was to "create a consumer bureau . . . that is independent," 156 Cong. Rec. S587l (20 10) (Sen. Cardin), in order to "improv[e] regulatory independence," S. Rep. No. 1 11-176, at 24 (2010). The statutory text further reflects Congress's intention of creating "an independent bureau." 12 U.S.C. § 549 l (a). This absolute and unchecked independence runs contrary to the Constitution's vesting of the Executive Power in a single President as provided for in Article II of the Constitution. Congress cannot achieve indirectly through a federal agency what it cannot itself achieve directly - the dilution of executive Power through legislation which impedes the President's exclusive constitutional authority to "take Care that the Laws be faithfully executed."

The CFPB is unconstitutionally structured.  The inquiry ends and the Second CID should be set aside.



### E.       Mere Severance Of Dodd-Frank's Offending Language Does Not Remedy 10 Years Of Unconstitutional Metastasis Throughout The CFPB.

The legal foundation of the CFPB rests upon a malignant constitutional defect which permeates every facet of the agency.  The rules it makes, the policies it promotes, the enforcement and investigation activities it undertakes, and the quasi-judicial power it exercises are all shaped (and tainted) by the unchecked and absolute power of an unconstitutional and unaccountable Director.  The Bureau's self-preserving argument that the "for cause" removal provision of the Dodd-Frank Act can be severed from the remainder of the statute and that the Bureau can proceed without any adverse consequences is simply wrong.  This "no harm, no foul" approach would leave intact the products of an unconstitutional legal juggernaut.  The CFPB proposes to change the blueprints without actually altering building.  Liberty faces grave danger if Congress be allowed to create unconstitutional federal agencies to run roughshod over the People until the judiciary, 10 years later, declares it unconstitutional but does not require Congress to start over.  Such an approach would leave intact the offspring of an unconstitutional statute which produced the largest, most powerful federal regulatory agency to regulate the financial services industry this nation has ever seen.  Unlike the agencies contemplated in *Humphrey's Executor* and *FreeEnterprise Fund*, the CFPB bears no checks, no controls, no hallmarks of the protections of Liberty designed by the separation of powers.  The Bureau's decade of unchecked growth and legal production has been significantly influenced by – even *dictated by* - the Bureau's constitutional defect.  But-for the Bureau's structural infirmity, the agency and all of its processes, rules, and structure would look very different today.

Congress may not push the Constitutional envelope without consequence.  Congress pushed too far when it passed Dodd-Frank and overstepped the boundaries established by the separation of powers.  The consequence must be the treatment of Dodd-Frank as a legal nullity.  The Second CID should be set aside in toto.

### 1.   Congress Would Not Have Enacted Dodd-Frank Without The CFPB's Unconditional Autonomy And Independence.

In determining whether an unconstitutional provision should be severed from a statute "the Court must ask whether the statute minus any invalid provision" will function in a <u>manner</u> consistent with the intent of Congress and "is legislation that Congress would . . . have enacted."  *Alaska Airlines*, 480 U.S., 768, 685 (1987).  A Court should not use the severability



Executive Secretary
Page **12** of **23**

doctrine to rewrite "an unconstitutional statute" because that also "circumvent(s) the intent of the legislature." *Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 329-30 (2006). If the answer to either question is no, i.e., whether the statute minus the invalid provision will function in a manner consistent with the intent of Congress and is legislation that Congress would have enacted, then the invalid provision cannot be severed. *See, Alaska Airlines*. *Id.*

Dodd-Frank's severability clause is merely probative of a legislative intent and is by no means dispositive. *See*, *Dorchy v. Kansas*, 264 U.S. 286, 290 (1924). For this reason, the Supreme Court has declined to sever an invalid provision despite the existence of a severability clause. Thus, the Supreme Court sometimes declines to sever an invalid provision despite a severability clause. *See, e.g.*, *City of Akron v. Akron Ctr. For Reprod. Health, Inc.*, 462 U.S. 416, 425 n.8, 445-46 n.37 (1983), *overruled on other grounds by Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992); *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 83-84 (1976); *Sloan v. Lemon*, 413 U.S. 825, 833-35 (1973); *Hill v. Wallace*, 259 U.S. 44, 70-71 (1922). Congress expressed its dedicated intention to establish the CFPB as an independent Bureau. *See*, 12 U.S.C. §5491(a). This clear and express Congressional expression leads to the inevitable conclusion that the "for cause" removal provision was consistent with the intent of Congress and that it would not have enacted the legislation had the Director been removable at will by the President. Accordingly, §5491(a) ties the Bureau's very existence to its freedom from Presidential oversight as evidenced by the for-cause removal provision and the Director's five year term. Other features of the enabling legislation provide additional support for this conclusion.

Congress transferred to the CFPB the authority to enforce and issue rules implementing 18 existing laws previously administered by seven (7) different Federal agencies. *See*, 12 U.S.C. §5481(12), 5512(d)(4) and 5581. Many of those agencies themselves are free from presidential control. *See, e.g.,* 12 U.S.C. §5581(a)(2)(A) (including Federal and Board of Governors, Federal Deposit Insurance Corporation, Federal Trade Commission and National Credit Union Administration). This Court's excision of the "for cause" removal provision would operate as a judicial transfer of power to the Executive branch of far reaching powers that prior to the enactment of Dodd-Frank were distributed by Congress to several non-executive agencies. Power to regulate this broad swath of the United States economy was decentralized throughout *independent* federal agencies. Dodd-Frank was designed to centralize the federal regulatory scheme over the financial services sector of the economy into a single *even more independent* federal agency. Congress *did not* enact Dodd-Frank to



Executive Secretary
Page **13** of **23**

*eliminate* independent regulation of the financial services industry by centralizing the wide-reaching authority of 7 independent federal regulatory agencies into a single federal agency controlled by the pleasure of the President.  The Bureau's severance remedy achieves precisely that outcome in derogation of Congresses clear and express intention.  Congress so valued the CFPB's *independence* that it forfeited its own oversight by exempting the agency from congressional appropriations review.

Excising the "for cause" removal provision would result in a metamorphosis of the CFPB from an independent agency to an unprecedented regulator not accountable to Congress through appropriation oversight.  This result would dramatically alter the balance of power between the legislative and executive branches and subvert the express intentions of Congress in enacting Dodd-Frank.  Congress would *not* have been willing to make such a sweeping delegation of power to the President "without a strong oversight mechanism." *Alaska Airlines*, 480 U.S. at 685 (considering severability of legislative).  This Court should not rewrite the statute by excising the "for cause" language and forcing an unprecedented (and unintended) shift in federal regulatory power from 7 independent agencies to the President.

The presumption of severability is rebutted.  A severability clause "does not give the Court power to amend" a statute. *Hill v. Wallace*, 259 U.S. 44, 71 (1925).  Further, a severability clause is not a license to cut out the "heart" of the statute. *Cf. Alaska Airlines*, 480 U.S. at 691.  Because the independence of the CFPB's Director is at the heart of Title X of Dodd-Frank, this Bureau should not merely sever the "for cause" language of Dodd-Frank, but instead acknowledge the existential threat to Liberty posed by the Bureau's constitutional defect and decline any further exercise of purported executive power until Congress remedies Dodd-Frank's constitutional ailment.  The Bureau should grant this petition and set aside the Second CID in toto.



Executive Secretary
Page **14** of **23**

## II.   IF THE BUREAU DOES NOT SET ASIDE THE SECOND CID, THEN THE LAW FIRM ALTERNATIVELY ARGUES THAT THE SECOND CID SHOULD BE MODIFIED.

### A.   <u>The Bureau Should Modify The Return Date Of The Second CID To Follow The U.S. Supreme Court's Decision In *Seila Law, LLC v. Consumer Financial Protection Bureau.*</u>

The Supreme Court's order granting Seila Law, LLC's Petition for Certiorari explained that "in addition to the question presented by the Petition, the parties are directed to brief and argue the following question:  If the Consumer Financial Protection Bureau was found unconstitutional on the basis of the separation of powers, can 12 U.S.C. §5491(c)(3) be severed from the Dodd-Frank Act?"  The United States Supreme Court will likely provide definitive guidance as to the constitutional issues presented in this petition to set aside the Second CID.

The Bureau has the unconditional authority to modify the return date of the Second CID.  Several factors weigh in favor of extending the Law Firm's deadline to respond to the Second CID until after the Supreme Court decides *Seila Law.*

### 1.   Administrative Economy Is Served By An Extended Return Date.

The Constitutional issues presented in this petition are presently pending before the Supreme Court and will have a direct impact on the future course of this investigation, including the enforceability of the Second CID.  The Supreme Court's ruling will bind the Bureau and the Law Firm.  Absent an extended return date, the Bureau may be required to revisit, modify, withdraw, or even refile a new petition to enforce the Second CID depending on the outcome of *Seila Law.*  This effort creates unnecessary burden on the Bureau and the Law Firm, which burden can be avoided by first obtaining guidance from the Supreme Court on the now-admitted Constitutional defect suffered by the Bureau.  These circumstances weigh heavily in favor of extending the Law Firm's obligation to respond to the Second CID until after the Supreme Court has decided the dispositive constitutional issues raised in this petition.



Executive Secretary
Page **15** of **23**

### 2.     The Law Firm Would Suffer Tremendous Hardship And Prejudice If The Return Date Is Not Extended.

The Law Firm has withstood nearly 3 years of overwhelming federal government investigation and intrusion by an agency which now admits that its unchecked, unaccountable executive power violates Article II of the Constitution.  That very unconstitutional power now bears down upon the Law Firm again in the form of a Second CID which was specifically designed to circumvent judicial review of the First CID.  The Bureau abandoned its proverbial "day in court" by withdrawing the First CID and side-stepping judicial review which would have reached the merits of the Law Firm's objections to the First CID.  It would impose an extraordinary and unnecessary burden on the Law Firm if it was required to respond to the Second CID only to raise the very same Constitutional issues which lead to the Bureau's Petition on the First CID only to later learn that the Supreme Court has declared 12 U.S.C. §5491 unconstitutional and has further determined that because of the unconstitutional delegation of power that Title X of the Dodd-Frank Act is invalid in toto.

### 3.     The Bureau Is Not Prejudiced By An Extended Return Date.

The Law Firm respectfully suggests that there is no prejudice or consequence to be visited on the Bureau as the result of an extended return date.  Since the entry of the order granting the Petition for Certiorari in *Seila Law, LLC,* at least one court has completely closed a CFPB Enforcement Action filed against a debt collection law firm, conferring upon the Bureau the right to seek to reopen the case when *Seila Law* is decided.  *See,* Exhibit C.  That Court determined that the Bureau suffered no prejudice sufficient to warrant a continuation of the action prior to the Supreme Court's decision.

The Bureau's own behavior belies any notion that it would suffer any prejudice by an extended return date.  That the Bureau saw fit to withdraw the First CID before Judge Román issued a decision on the Bureau's Petition to Enforce the First CID, preferring instead to begin the entire CID process anew with the issuance of an identical Second CID, evidences the Bureau's own belief that an additional short delay in the return date does not prejudice the Bureau in the least.  In an unrelated case, the CFPB even requested an adjournment of oral argument in the *RD Legal Funding* case pending the ruling in *Seila Law,* which request was granted by the Second Circuit Court of Appeals.  This request further evidences the Bureau's keen understanding of the significance *Seila Law* bears upon the Bureau's ability to exercise



Executive Secretary
Page **16** of **23**

executive power.  These actions also evidence the Bureau's own belief that it suffers no prejudice by waiting for the Supreme Court to address the dispositive constitutional issue which is the focus of the Law Firm's petition to set aside the Second CID.  The Bureau is not prejudiced by an extended return date.  The Bureau should modify the Second CID to include a return date not less than 30 days from the date on which the Supreme Court issues its decision in the *Seila Law, LLC.*

### B.   The Basis For The Law Firm's Previous Modification Requests Relating To The First CID Apply Equally To The Identical Second CID.

On July 14, 2017 the Law Firm submitted a written request to modify certain portions of the First CID.  *See*, Exhibit D.  On July 25, 2017 the Bureau responded and modified the First CID.  *See*, Exhibit E.  The First CID and Second CID are virtually identical.  The same basis upon which the Law Firm requested modification of the First CID apply equally to the same modification request of the Second CID.  The Law Firm incorporates by reference its July 14, 2017 requests to modify the First CID to apply as its requests to modify the same items in the same ways in the Second CID.  There is no good-faith basis to deny these modification requests now, when the Bureau granted them previously.

### C.   The Law Firm Responded To The First CID And The Bureau Should Accept Those Responses To The Identical Requests Contained In The Second CID.

In its July 25, 2017 correspondence, the Bureau extended certain deadlines to create a rolling production schedule over the following 10 week period.  By October 2, 2017, the Law Firm provided written responses, supplemental responses, and amended responses to the First CID and produced thousands of pages of documents and data.  The Law Firm did not produce (and expressly withheld) documents and information protected by the attorney-client privilege, the attorney work-product privilege, and all documents and information protected by Rule 1.6 of the New York and New Jersey Rules of Professional Conduct applicable to attorneys.  The Law Firm withheld complete responses to Interrogatory Number 12, Requests for Written Reports Nos. 1-5 and 7, Document Requests Nos. 2, 6, 12, and 14, and Requests for Tangible Things Nos. 1-4 contained in the First CID.

Requiring the Law Firm to re-respond to written requests and re-produce thousands of pages of documents and data is unnecessary, duplicative, overly burdensome, and does not



Executive Secretary
Page **17** of **23**

serve the Bureau's purpose of furthering its investigation of the Law Firm's business practices.  The Law Firm requests that the Second CID be modified to limit the its requests "to the extent not already produced" or include a similar limiting instruction such that the Law Firm would not be required to re-respond to 77 unique Interrogatories (include subparts), 42 unique Requests for Written Reports (including subparts), 13 unique Requests for Documents, and 4 unique Requests for Tangible Things.  Alternatively, the Law Firm requests that the Bureau accept an "affirmation" from the Law Firm that the previous responses to the First CID remain the current, accurate responses to the Second CID (save and except the items expressly withheld for the reasons identified above).

### D.    <u>The Scope Of The Second CID Far Exceeds Any Statute Of Limitations Applicable To The Claims Identified In The Statement Of Purpose Section Of The Second CID, Which Should Be So Limited.</u>

Part III.C. of the Second CID stipulates that the applicable period for responsive materials begins from January 1, 2014 until the date of the CID. As to the request for information relating to purported violations of the Fair Debt Collection Practices Act, any action to enforce any liability under the FDCPA must be brought within one year from the date the violation occurs. *See*, 15 U.S.C. § 1692k(d).  During oral argument before the DC Circuit Court of Appeals in the closely watched case between the Bureau and PHH, counsel for the Bureau admitted that the Bureau's enforcement authority is not unbounded by the statute of limitations.  Similarly, the applicable statute of limitations under the Fair Credit Reporting Act to enforce "any liability created under" the Act is the earlier of

>    (1)    2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability, or

>    (2)    5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. §1681p.  The statement of purpose contained in the First CID, dated June 23, 2017, explains that the purpose of the Bureau's investigation is to determine whether "debt collectors, furnishers, or other persons in connection with the collection of debt and furnishing of information have engaged or are engaging in" violations of law.  At the time the Bureau served the First CID it was purportedly aware of a violation of the FCRA, thus giving rise to the investigation in the first instance.  At the very least, by October 2, 2017, when the Law



Executive Secretary
Page **18** of **23**

Firm submitted its final document production and written responses to the First CID the Bureau became aware of the Law Firm's alleged violation of the FCRA.  As a result, any such claims are now time barred as beyond the 2 year limitation period.

Because the CID requests information well beyond the period of time when the CFPB could seek enforcement of any purported FDCPA or FCRA violation, the Law Firm respectfully requests confirmation of its satisfactory compliance with the Second CID by responding using an Applicable Period of activities be limited to the period from November 14, 2017, through the date of the CID.

## III.   CONCLUSION

By its own admission, the Bureau is unconstitutionally structured.  That constitutional defect permeates every facet of the Bureau's activity, shaping and directing the Bureau's behavior in ways which violate the separations of powers, trample due process, and threaten the very Liberty our system of government is designed to protect.  The Law Firm requests that the Second CID be set aside in toto.  Alternatively, the Law Firm requests that the Second CID be modified as described above.

Very truly yours,

*John H. Bedard, Jr.*

John H. Bedard, Jr.
Bedard Law Group, P.C.