**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BUREAU OF CONSUMER<br>FINANCIAL PROTECTION,<br><br>　　　Petitioner,<br><br>　　　v.<br><br>LAW OFFICES OF CRYSTAL<br>MORONEY, P.C.,<br><br>　　　Respondent. | Case No. 7:20-cv-03240-KMK |

**<u>RESPONSE TO ORDER TO SHOW CAUSE</u>**

NEW CIVIL LIBERTIES ALLIANCE
Michael P. DeGrandis, *pro hac vice*
1225 19th Street NW, Suite 450
Washington, DC 20036
tel.: (202) 869-5210
mike.degrandis@ncla.legal

*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ......................................................................................... 1

The Consumer Financial Protection Bureau Is Unconstitutional ........................................... 1

Violations of the Separation of Powers Cannot Be Ratified, but Even if They Could, the
Bureau's Director Cannot Ratify Her Own Prior Invalid Acts ............................................... 3

The Bureau Has Not Satisfied Preconditions for Enforcing the CID ..................................... 4

The Bureau Failed to Join at Least One Required Party ........................................................ 6

STATEMENT OF FACTS ................................................................................................... 7

I.    RELEVANT FACTS UPON WHICH THE PARTIES SUBSTANTIALLY AGREE ............................ 7

II.   RELEVANT FACTS MISSING FROM, OR INCOMPLETELY STATED IN, THE BUREAU'S
AMENDED PETITION TO ENFORCE AND SUPPORTING DOCUMENTATION AND ARGUMENTS ...... 9

ARGUMENT ......................................................................................................................... 14

I.    TITLE X OF THE DODD-FRANK ACT IS UNCONSTITUTIONAL BECAUSE IT VIOLATES THE
APPROPRIATIONS AND VESTING CLAUSES ................................................................................ 14

II.   DIRECTOR KRANINGER'S PURPORTED RATIFICATIONS ARE INEFFECTUAL BECAUSE AN
INVALID AGENT'S ACTS ARE VOID AB INITIO, OR IN THE ALTERNATIVE, INVALID ACTS MAY
ONLY BE RATIFIED IN A DETACHED AND CONSIDERED MANNER BY SOMEONE WHO WAS A
VALID PRINCIPAL AT THE TIME THE UNCONSTITUTIONAL ACTS OCCURRED .......................... 19

A.   The Director's Invalid Acts Are Nullities that Cannot Be Ratified ........................... 19

B.   Alternatively, if an Invalid Agent's Acts May Be Ratified, They May Only Be
Ratified by Someone Who Was a Valid Principal at the Time the Acts Occurred ........... 21

C.   Neither the Bureau's Regulations, nor Its Related Guidance Documents, upon
Which the Bureau Relies for Authority to Investigate the Law Firm, Have Been
Validly Ratified........................................................................................................... 23

D.   Ultra Vires Acts, Such as Those that Violate the Separation of Powers, Cannot Be
Ratified with the Wave of a Hand—Ratification Must Be "Detached and Considered" .. 25

III.  THE SECOND CID IS UNENFORCEABLE, IN WHOLE OR IN PART, BECAUSE IT
IMPERMISSIBLY SEEKS INFORMATION RELATED TO THE PRACTICE OF LAW, IT SEEKS
DOCUMENTS ALREADY IN CFPB'S POSSESSION, AND CFPB HAS NOT FOLLOWED PROPER
ADMINISTRATIVE PROCEDURE IN PURSUING THE INVESTIGATION .......................................... 27

A.   To the Extent that the Second CID Seeks Information Implicating the Practice of
Law, the Second CID Does Not Seek Information Relevant to a Legitimate Purpose ..... 28

B.   To the Extent that the Second CID Seeks Information Already Within the Bureau's
Possession, the Second CID Is Invalid ........................................................................ 31

C.   The Second CID Is Invalid Because the Bureau Has Not Followed the Required Administrative Steps in Issuing the Second CID, in Conducting Its Investigation and Adjudication of the Second CID, or in Enforcing the Second CID in this Court ............. 33

IV.  THIS COURT SHOULD DENY ENFORCEMENT OF THE SECOND CID BECAUSE THE BUREAU FAILED TO JOIN A REQUIRED PARTY TO ITS ENFORCEMENT ACTION AGAINST THE LAW FIRM ....................................................................................................... 34

CONCLUSION ................................................................................................... 35

Certificate of Service ........................................................................................ 36

Index of Exhibits .............................................................................................. 37

**TABLE OF AUTHORITIES**

## Cases

*Advance Disposal Servs. East, Inc. v. NLRB*, 820 F.3d 592 (3d Cir. 2016)............26

*CFPB v. Accrediting Council for Indep. Colls. & Sch.*, 854 F.3d 683 (D.C. Cir. 2017) ...................................................................................................................1

*CFPB v. Mortg. Law Grp., LLC*, 157 F. Supp. 3d 813 (W.D. Wis. 2016)..............28

*CFPB v. RD Legal Funding*, LLC, 332 F. Supp. 3d 729 (S.D.N.Y. 2018)........3, 22

*CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456 (5th Cir. 2018) .........................5

*Doolin Sec. Sav. Bank, F.S.B. v. Ofc. of Thrift Supervision*, 139 F.3d 203 (D.C. Cir. 1998)....................................................................................................26

*Endicott Johnson Corp. v. Perkins*, 317 U.S. 501 (1943) .......................................30

*FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993).........................21

*FTC v. Am. Tobacco Co.*, 264 U.S. 298 (1924)......................................................28

*FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966 (D.C. Cir. 1980) ...............1

*Gundy v. United States*, 139 S. Ct. 2121 (2019)......................................................15

*In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412 (D.C. Cir. 1994) ...................5

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 117 (D.C. Cir. 2015) ............................................................................................... 25, 26

*Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20 (2d Cir. 1983)....................4

*Loving v. United States*, 517 U.S. 748 (1996) .........................................................15

*Lucia v. SEC*, 138 S. Ct. 2044 (2018)......................................................................21

*NLRB v. Noel Canning*, 573 U. S. 513 (2014)..........................................................16

*Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414 (1990) ...............................14

*Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186 (1946) ...................................28

*PHH Corp. v. CFPB*, 881 F.3d 75 (D.C. Cir. 2018)........................................ 16, 24

*Seila Law v. CFPB*, No. 19-7, 2020 U.S. LEXIS 3515 (June 29, 2020)......... *passim*

*State Nat'l Bank of Big Spring v. Lew*, 197 F. Supp. 3d 177 (D.C. Cir. 2016) .......24

*United States v. Associated Merchandising Corp.*, 261 F. Supp. 560 (S.D.N.Y. 1966) ............................................................................................ 27, 28

*United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464 (2d Cir. 1996) ..........28

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ..........................................28

*United States v. Powell*, 379 U.S. 48 (1964) ..................................................... 27, 28

## Statutes

12 U.S.C. § 1815 .....................................................................................................16

12 U.S.C. § 243 .......................................................................................................16

12 U.S.C. § 4516 ..................................................................................17
12 U.S.C. § 5481 ..................................................................................17
12 U.S.C. § 5491 .................................................................................2, 7
12 U.S.C. § 5497 ............................................................... 2, 15, 17, 19
12 U.S.C. § 5497(a)(1) ........................................................................15
12 U.S.C. § 5517 ...............................................................................5, 29
12 U.S.C. § 5531 ..................................................................................17
12 U.S.C. § 5536 ..................................................................................17
12 U.S.C. § 5581 ..................................................................................17
16 U.S.C. § 6802 ..................................................................................17
39 U.S.C. § 2401 ..................................................................................17

## Other Authorities

Alexander Hamilton, *Explanation* (Nov. 11, 1795) in *The Works of Alexander
  Hamilton*, Vol. VII, (John C. Hamilton ed., S.D.N.Y. Clerk 1851) ...................15
Exec. Order No. 13891, 84 Fed. Reg. 199, 55235 (Oct. 9, 2019) ................... 23, 25
Exec. Order No. 13892, 84 Fed. Reg. 199, 55239 (Oct. 9, 2019) ..........................25
The Federalist No. 48 (J. Madison) .......................................................25
The Federalist No. 58 (J. Madison) .......................................................19

## Rules

Fed. R. Civ. P. 19 ...................................................................... 14, 34, 35

## Treatises

Restatement (Second) of Agency § 87 (Am. Law Inst. 1958)................................22
Restatement (Third) of Agency § 3.04(1) (Am. Law Inst. 2006)..........................22

## Regulations

CFPB Rat. of Bureau Actions Rule, 85 Fed. Reg. 133, 41330
  (July 10, 2020) ...................................................................... 13, 23, 27

## Constitutional Provisions

U.S. Const. art. I, § 1...................................................................... 14, 15, 19
U.S. Const. art. I, § 7......................................................................19
U.S. Const. art. I, § 9...................................................................... 14, 19

Respondent Law Offices of Crystal Moroney, P.C. ("Ms. Moroney's Law Firm" or "the Law Firm") submits this Response to Order to Show Cause, and states as follows:

## PRELIMINARY STATEMENT

There are important limits on the Consumer Financial Protection Bureau's ("CFPB" or "the Bureau") power to issue and enforce its civil investigative demands ("CIDs").[1]  To maintain these limits "federal courts stand guard … against abuses of the[] subpoena-enforcement processes[.]"[2]  This Court has a "duty not to rubber-stamp the Bureau's CIDs, but to adjudge their legitimacy[.]"[3]

### The Consumer Financial Protection Bureau Is Unconstitutional

Post-*Seila Law*, before the Court can determine whether the CID at issue is enforceable, the crucial question of constitutional authority remains to be addressed:  *May Congress divest itself of its exclusive prerogative to make appropriations through law, and cede its appropriations authority to the President and an agency head, whose funding decisions are unreviewable by Congress?*  Such an arrangement cannot be constitutional.

CFPB is a federal agency with extraordinary power, but what makes it an abominable threat to civil liberties is that CFPB combines its extraordinary power with unparalleled institutional independence.  A product of Title X of the 2010 Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), Congress designed the Bureau to be completely free from presidential and congressional control, creating a regulatory beast with a

---

[1]    *CFPB v. Accrediting Council for Indep. Colls. & Sch.*, 854 F.3d 683, 689 (D.C. Cir. 2017) ("[T]here are real limits on any agency's subpoena power.").
[2]    *Id.* (quoting *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1024 & n.39 (D.C. Cir. 1978) (internal quotations omitted)).
[3]    *Id.* (citing *FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966, 973-74 (D.C. Cir. 1980)).

structure "almost wholly unprecedented."[4]  CFPB had a single-Director who was removable only

for-cause,[5] and it still receives unreviewable funding directly from the Federal Reserve.[6]  As the

Supreme Court recently explained,

> the CFPB is in an entirely different league.  It acts as a mini legislature, prosecutor,
> and court, responsible for creating substantive rules for a wide swath of industries,
> prosecuting violations, and levying knee-buckling penalties against private
> citizens.[7]

The Supreme Court declared the Director's insulation from presidential control

unconstitutional.[8]  While this is a welcome change, the Court chose to use "a scalpel rather than

a bulldozer[,]"[9] and severed the for-cause removal provision in Title X, allowing CFPB to

"remain fully operative without the offending tenure restriction."[10]  But stitching the Bureau

back together turned the regulatory beast into an Executive Branch Frankenstein's monster.

CFPB is still headed by a single Director rather than a commission.[11]  Because the Director is

now directly answerable to the President, the President can exercise dominion over an agency

with "knee-buckling"[12] power over private citizens and an unreviewable pipeline to Federal

Reserve receipts.[13]  In FY2020, the President can demand *$695.9 million* in off-the-books

---

[4]  12 U.S.C. § 5491.  The Director also serves a five-year term, so the Director may often be from a different party than a newly elected President.  *Id.*

[5]  12 U.S.C. § 5497.

[6]  *Seila Law v. CFPB*, No. 19-7, 2020 U.S. LEXIS 3515, *37 n.8 (June 29, 2020) (Exhibit A).

[7]  *Id.*

[8]  *Id.* at *12.

[9]  *Id.* at *58.

[10]  *Id.* at *54.

[11]  Respondent is merely pointing out that the single Director form is entirely different from a commission form, which is more common among independent agencies, and carries with it different dynamics and duties to the President.  Respondent does ***not*** concede that CFPB would be constitutionally structured were it organized in the form of a commission.  Independent agencies headed by commissions are unconstitutional.  In fact, the Supreme Court has signaled that it may be ready to reconsider *Humphrey's Ex'r v. United States*, 295 U.S. 602 (1935).  *See Seila Law*, 2020 U.S. LEXIS 3515 at *59 ("This Court's decision today takes a restrained approach on the merits by limiting [*Humphrey's Executor*], rather than overruling it.") (Thomas, J., dissenting) (internal citation omitted).  If the Supreme Court overrules *Humphrey's Executor*, Respondent reserves the right to assert that the Bureau is unconstitutionally structured, as well as unconstitutionally funded.

[12]  *Id.* at *37 n.8.

[13]  *Id.*

financing, free from congressional appropriation or oversight.[14]  Even the most scrupulous President would struggle to resist the temptation to use CFPB to abuse these funds for political ends.  This is an unprecedented agency structure operating outside constitutional bounds, giving the appropriations and spending power entirely over to the President.

**Violations of the Separation of Powers Cannot Be Ratified, but Even if They Could, the Bureau's Director Cannot Ratify Her Own Prior Invalid Acts**

Even if the Court finds that CFPB is constitutionally funded, the Court must consider a second question when adjudging the validity of the CID's enforcement:  *May the invalid acts of an unconstitutionally insulated director be subsequently ratified, and if so, may they be ratified by the agency director herself—the agent in the relationship—rather than by the only lawful principal at the time of the invalid acts—the President?*  A prior unconstitutional arrangement cannot be rendered constitutional through an agent's ratification.

The Supreme Court remanded the issue of ratification to the lower courts.[15]   First off, actions taken by unconstitutionally structured agencies must be nullities.  Any other result would mean that successful separation-of-powers challenges will not receive ***any*** relief.  But even if ratification by the same unconstitutionally insulated Director were possible, the purported ratification would still be ineffectual.  "Ratification addresses situations in which an agent was without authority at the time he or she acted and the ***principal*** later approved of ***the agent's prior unauthorized acts***."[16]  The Bureau's only lawfully acting principal prior to severing for-cause

---

[14]  CFPB CFO Update (Mar. 16, 2020) *available at*
https://files.consumerfinance.gov/f/documents/cfpb_cfo-update_report_fy-2020_q1.pdf.
[15]  *Seila Law*, 2020 U.S. LEXIS 3515 at *52 n.12 ("[W]hether and when the temporary involvement of an unconstitutionally insulated officer in an otherwise valid prosecution requires dismissal … is best resolved by the lower courts in the first instance.").
[16]  *CFPB v. RD Legal Funding*, LLC, 332 F. Supp. 3d 729, 785 (S.D.N.Y. 2018) (emphasis added).

removal was the President of the United States.[17]  Therefore, only the ***President*** can ratify the unconstitutionally insulated acts of pre-*Seila Law* Directors, but he has not done so.

**The Bureau Has Not Satisfied Preconditions for Enforcing the CID**

If the Court decides that CFPB's funding and/or ratification is either improper or ineffectual, then the Court should determine whether the enforcement action itself is valid.  It is not.  Frankenstein's monster's rampage began three years ago, and it continues unabated, undeterred by *Seila Law*.  In June 2017, Petitioner issued a Civil Investigative Demand ("First CID" or "Demand") seeking, *inter alia*, production of certain confidential and privileged documents.  Ms. Moroney's Law Firm declined to disclose confidential and privileged documents and information, as was her[18] ethical duty.  But Respondent did, in fact, turn over thousands of pages of other documents and answered more than 80 interrogatories (including subparts).

Eventually, CFPB asked this Court to compel production of the withheld confidential and privileged documents ("First Show Cause Hearing").  But just four days prior to the First Show Cause Hearing, which should have conclusively resolved the confidentiality and privilege issues, as well as the Law Firm's challenge to CFPB's constitutional authority, the Bureau (without any explanation) withdrew its Demand.  So, after two-and-a-half years and nearly $75,000 in legal fees and costs since CFPB began its investigation, the Court dismissed the case, believing that there was nothing left to decide.

---

[17]  *See Seila Law*, 2020 U.S. LEXIS 3515 at *49.

[18]  This Response alternatively employs the pronouns "she" and "her" with "it" where appropriate.  Respondent is a professional corporation.  A corporation is an artificial entity that can only act through its agents.  *See Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983).  Crystal G. Moroney, Esq. is the majority shareholder of Ms. Moroney's Law Firm.  She is responsible for its course and conduct in its provision of legal services and she alone decides whether and how to address the Petitioner's demands.  Moreover, the law licenses at risk of state bar censure for the unethical disclosure of client confidences are Ms. Moroney's, not her firm's.  While Ms. Moroney may not be the Respondent in this action, she is indistinguishable from the Respondent.

It soon became apparent that CFPB's mootness claim was a precalculated ruse. Within hours of the dismissal, CFPB announced that it would issue a **second** CID ("Second CID" or "Demand"). The Second CID proved to be substantially similar to the First, but CFPB did not stop there. Once freed from judicial supervision, CFPB quickly renewed its coercive efforts to invade attorney-client confidences and obtain privileged communications. Within two weeks, the Bureau further turned the screws on Ms. Moroney's Law Firm by serving third-party CIDs on its clients.

But "CFPB does not have 'unfettered authority to cast about for potential wrongdoing.'"[19] Thus, the Bureau must comply with statutory requirements.[20] As it was true last November, so it remains true today: Respondent is, first and foremost, a **law firm**. While the Law Firm's services include debt-resolution activities that might be regulated by CFPB as to third parties, the Bureau is statutorily **prohibited** from regulating **the practice of law**.[21] Yet, this fact has not stopped CFPB from pressing its obstinate demand for information and documents including those created in the Law Firm's practice of law that the Law Firm is duty-bound to protect from disclosure. To the extent that the Second CID seeks documents and information that interfere with the Law Firm's attorney-client relationships and/or regulate the practice of law, it is unenforceable because it lacks a legitimate statutory basis and purpose.

Furthermore, CFPB has not met essential preconditions to seek CID-enforcement. For instance, it already has many of the documents and much of the information it seeks in its possession, which Ms. Moroney's Law Firm provided in response to the First CID. Also, contrary to Petitioner's claim, CFPB has not properly followed the administrative process in

---

[19] *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 460 (5th Cir. 2018) (quoting *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994)).

[20] *Source for Pub. Data*, 903 F.3d at 460.

[21] 12 U.S.C. § 5517(e)(1).

issuing the Second CID or petitioning this Court for its enforcement.  *Seila Law* has rendered

CFPB's process defective on multiple levels, even apart from the ratification problem.  Thus, to

the extent that the Bureau has not satisfied statutory preconditions to its enforcement of the

Second CID, the Second CID is unenforceable.

**The Bureau Failed to Join at Least One Required Party**

FedChex Recovery, LLC, one of the Law Firm's clients that CFPB targeted for

investigation after manufacturing mootness of the First Show Cause Hearing, has a Petition to

Enforce pending against it in the Central District of California.[22]  FedChex has an ownership

interest in its confidential and privileged information—information whose disclosure CFPB is

seeking to compel in both this Court ***and*** in California.  Yet, the Bureau has not joined this

interested party, nor has it alerted either court of these related cases.  If this Court reaches the

issue of the Second CID's enforceability, it should order CFPB to promptly join FedChex to this

enforcement action.

* * *

It is time to bring the Bureau's three-year rampage against Ms. Moroney's Law Firm—

and its decade-long detour into constitutional governance—to an end.  *Seila Law* has not rescued

CFPB from its unconstitutional ways.  Rather, it has confirmed and deepened the constitutional

problems with the Bureau's structure—problems that cannot be papered over with ratification by

an agent or disregarded while Ms. Moroney's Law Firm suffers irreparable harm at the agency's

hands.

---

[22]  Case No. 8:20-mc-10-JLS-KES (June 9, 2020).

## STATEMENT OF FACTS

I.   **RELEVANT FACTS UPON WHICH THE PARTIES SUBSTANTIALLY AGREE**

The parties agree, at least in part, on several issues relevant to the Court's consideration of the merits of the Bureau's Amended Petition to Enforce.  Those relevant facts include:

1.      Pursuant to 12 U.S.C. § 5491(a), CFPB is an administrative agency of the United States.  Am. Pet. to Enforce CID, ECF No. 6, ¶ 8 (Apr. 27, 2020).

2.      In *Seila Law LLC v. CFPB*, No. 19-7, 2020 U.S. LEXIS 3515 (June 29, 2020), the Supreme Court held that CFPB's Director was unconstitutionally insulated from removal.  Not. of Ratification, ECF No. 18, at 1 (July 2, 2020).  We agree further that the Court severed the constitutionally defective insulation provision from the remainder of Title X of Dodd-Frank.  Not. of Ratification, ECF No. 18, at 1 (July 2, 2020).

3.      CFPB first issued a civil investigative demand to Ms. Moroney's Law Firm on June 23, 2017 ("First CID" or "the Demand").  Assae-Bille Decl. ¶ 7 (Apr. 24, 2020).

4.      CFPB subsequently issued a civil investigative demand to Ms. Moroney's Law Firm on November 14, 2019 ("Second CID" or "the Demand").  Assae-Bille Decl. ¶ 7.

5.      When CFPB issued both the First and Second CIDs, the Director was unconstitutionally insulated from removal from office.  Am. Pet. to Enforce CID, ECF No. 6, ¶ 1 *and* Not. of Rat., ECF No. 18, at 1.

6.      The Second CID's Notice of Purpose stated that the investigation sought to determine whether the Law Firm: (1) disregarded consumer warnings that debts were the result of identity theft or otherwise disregarded disputed debt in a manner that was "unfair, deceptive, or abusive;" (2) ignored consumer cease-and-desist requests or engaged in prohibited communications with consumers or third parties, or failed to provide required notices, or made

7

false or misleading representations; or (3) failed to correct and update furnished information or failed to maintain reasonable policies and procedures. Am. Pet. to Enforce CID, ECF No. 6, ¶ 1.

7. The First CID sought substantially similar information to the Second CID, but it is not perfectly identical to the Second CID. Assae-Bille Decl., ¶ 7. CFPB has consistently stated that the First and Second CIDs are "substantively the same" and that the Second CID "requested largely the same information as the first one[.]" *See, e.g.*, Conf. Tr. at 6-7, *CFPB v. Law Offices of Crystal Moroney*, No. 19-cv-1732 (NSR) (Nov. 21, 2019) *and* Conf. Tr. at 30, *Law Offices of Crystal Moroney v. CFPB*, No. 19-cv-11594 (KMK) (Feb. 27, 2020).

8. On December 5, 2019, Ms. Moroney's Law Firm filed a Petition to Set Aside the Second CID, requesting that the Director (still unconstitutionally insulated from removal) set aside or modify the Second CID on constitutional and statutory grounds. Am. Pet. to Enforce CID, ECF No. 6, ¶ 16.

9. The Law Firm's Petition to Set Aside asked the Director, in part, to modify the Second CID to excuse it from producing any materials it previously submitted to the Bureau in response to the "substantially similar" First CID. Mem. in Support of Am. Pet. at 2 (Apr. 27, 2020).

10. On February 10, 2020, the Director (still unconstitutionally insulated from removal) denied the Law Firm's Petition to Set Aside or Modify the Second CID and directed Ms. Moroney's Law Firm to comply in full with the Demand within 10 days of her Order. Am. Pet. to Enforce CID, ECF No. 6, ¶¶ 3 &16. The Director's Decision and Order is attached as Exhibit B.

11. On March 19, 2020, Ms. Moroney's Law Firm informed CFPB that it would not comply with the Second CID. Am. Pet. to Enforce CID, ECF No. 6, ¶ 17.

## II.   RELEVANT FACTS MISSING FROM, OR INCOMPLETELY STATED IN, THE BUREAU'S AMENDED PETITION TO ENFORCE AND SUPPORTING DOCUMENTATION AND ARGUMENTS

There are many more facts, however, that are relevant to the Court's consideration of the merits (or lack thereof) of the Bureau's Amended Petition to Enforce, that are not adequately addressed in the Bureau's Amended Petition or supporting documentation and arguments.  Those relevant facts include:

12.     Although it is true that Ms. Moroney's Law Firm collects debt and furnishes consumer information to reporting agencies in the ordinary course of its business, Am. Pet. to Enforce CID, ECF No. 6, ¶ 9, this statement is deceptively incomplete.  The Respondent is a ***law firm***, first and foremost.  The Law Firm provides legal advice and services to clients.  Ms. Moroney has earned and maintains licenses to practice law in New York and New Jersey, and she and her Law Firm are closely regulated by the New York and New Jersey state bars.  Ms. Moroney's continued licensure is conditioned upon her strict adherence to the New York and New Jersey Rules of Professional Conduct.

13.     Although it is true that CFPA § 1052(c) empowers CFPB to issue a CID when it has reason to believe that "any person … may have any information[] relevant to a violation" of "Federal consumer financial law," Am. Pet. to Enforce CID, Case No. 7:20-cv-03240, ¶ 10, the statute does ***not*** empower CFPB to regulate the practice of law.  Nor does it empower CFPB to interfere with the attorney-client relationship or the confidences shared therein, which is a pillar of the American adversarial system of justice.  *See, e.g.*, N.Y.R. Prof. Conduct, Preamble ¶ 2 (Apr. 1, 2009) ("The touchstone of the client-lawyer relationship is the lawyer's obligation to assert the client's position under the rules of the adversary system, to maintain the client's confidential information except in limited circumstances, and to act with loyalty during the period of the representation.").

9

14.     Among other things, the Rules of Professional Conduct prohibit Ms. Moroney's Law Firm from disclosing confidential attorney-client communications, attorney work product, and other client confidences, absent a court order.  *See, e.g.*, N.Y.R. of Prof'l Conduct 1.6 and N.J.R. of Prof'l Conduct 1.6.

15.     The issue of protecting client confidences was at the core of the dispute with respect to the First CID, and it remains at the core of the dispute with respect to the Second.

16.     It became clear by August 2017 that CFPB was intractable when it came to its demand for privileged material in the First CID.  To break the impasse, Ms. Moroney's Law Firm engaged ethics counsel for independent advice on the privilege issue.

17.     Ultimately, the Law Firm concluded that it was her ethical duty under Rule 1.6 of the New York and New Jersey Codes of Professional Conduct to protect the confidentiality of attorney-client privileged material.  Yet, in another effort to accommodate CFPB, Ms. Moroney asked her clients if each would waive privilege and confidentiality.  Despite that the Law Firm's clients (the owners of privileges and confidential information) each refused to waive their privilege and confidentiality rights, CFPB insisted that she violate her legal ethics and turn over confidential and privileged documents anyway.

18.     In the end, Ms. Moroney's Law Firm substantially complied with the First CID by providing written responses to interrogatories and producing thousands of pages of documents and data.  The only documents she refused to produce were those protected by attorney-client confidences, nondisclosure principles, and those that were nonprivileged but inextricably intertwined with privileged materials.  Accordingly, Ms. Moroney's Law Firm withheld responses to Interrogatory No. 12, Written Reports Request Nos. 1-5 and 7, Document Request Nos. 2, 6, 12, and 14, and Tangible Things Request Nos. 1-4.

19.     On October 2, 2017, the Law Firm provided CFPB with an explanatory letter detailing the documents withheld from the Law Firm's First CID production and the basis for withholding them.  The letter is attached as Exhibit C.

20.     As to the Second CID, Am. Pet. to Enforce CID, ECF No. 6, ¶ 18, the ***only*** documents and information withheld were those related to the practice of law, not documents exclusively related to third-party debt collection.  The Law Firm produced all policies and procedures sought by the Second CID in this case.

21.     CFPB's assertion that it does not have many of the documents demanded in the Second CID is not based on any analysis of what has been produced or the nature of the documents and information to which it may lawfully seek.

22.     Although it is true that the Law Firm's First CID production may not have complied with all of CFPB's document format requests, Assae-Bille Decl., ¶ 8, the Law Firm is under no obligation to provide the Bureau with anything more than documents in the format kept in the ordinary course of business.  All of the documents in CFPB's possession are in industry-standard electronic formats, such as Microsoft Word, Microsoft Excel, and Adobe Acrobat. None of the documents are password-protected or encrypted.

23.     CFPB asserts that the Law Firm did not certify that its responses to the First CID were true and complete, Assae-Bille Decl., ¶ 8, but the relevance of its argument is unclear.  That the responses lacked a certification is irrelevant to the undeniable fact that the Law Firm provided a substantial portion of the documents and information requested in the First CID, which are also requested in the Second CID.

24.     On information and belief, the Director and Bureau did not initiate either the First or the Second CIDs due to consumer complaints regarding any of the three purported purposes

listed in the Second CID's Notice of Purpose.  Were it otherwise, the Bureau presumably would have so indicated.

25.     The Better Business Bureau has awarded Ms. Moroney's Law Firm an A-minus rating.

26.     The Bureau's Amended Petition to Enforce failed to alert the Court to the fact that the Second CID seeks information that is in the custody and control of Ms. Moroney's Law Firm, but not possessed by it.  The Second CID seeks, among other things, attorney-client confidences and privileged documents and information—material which are owned by the Law Firm's clients, not the Law Firm.

27.     The Bureau's Amended Petition to Enforce also misleads the Court regarding the information provided by third parties to the Bureau.  For instance, on information and belief, on or about March 12, 2020, Follett Corporation turned over to the Bureau all information related to its contacts with the Law Firm, in response to a CID.[23]  The Amended Petition to Enforce makes no mention of this, nor has the Bureau modified its Demand to reflect this.

28.     Additionally, the Bureau's Amended Petition to Enforce misleads the Court by omitting its pending Petition to Enforce a CID to the Law Firm's client, FedChex Recovery, LLC, in the United States District Court for the Central District of California, Case No. 8:20-mc-10-JLS-KES (June 9, 2020).  The FedChex Petition seeks some of the same information sought in the Second CID regarding the Law Firm's contact with its client, including written documents shared between Ms. Moroney's Law Firm and FedChex, and the engagement agreement for Ms. Moroney's Law Firm's services.  *See, e.g.*, FedChex Recovery, LLC CID at 1-2 (Nov. 20,

---

[23] *See* E-mail from Mark Sproat, Exec. V.P. Follett Corp., to Michael P. DeGrandis, *et al.* (Mar. 12, 2020, 14:01:05 EST) ("Follett is responding to a Civil Investigative Demand from the Bureau of Consumer Financial Protection.").  Follett's e-mail is attached as Exhibit D.

2019).[24]  In other words, the Bureau is now seeking the same confidential and privileged information in two courts, on opposite coasts, and has not informed either court of the existence of the other related case.

29.     CFPB's ostensibly factual assertions that it is seeking judicial enforcement of the Second CID to acquire information (1) that is relevant to a legitimate purpose; (2) that is not already within the Bureau's possession; and (3) that the agency has followed the administrative steps required to issue the Second CID, *see* Am. Pet. to Enforce CID, ECF No. 6, ¶ 11, are simply not true.  CFPB is not demanding information relevant to a legitimate purpose, as it has no jurisdiction to interfere with attorney-client relationships nor to regulate the practice of law. Additionally, much of the information requested in the Second CID is already in CFPB's possession.  And finally, CFPB has not followed the administrative steps required to execute its Amended Petition to Enforce because we now know (post-*Seila Law*) that the President of the United States—not Director Kraninger—was the only valid principal of the Bureau at all times relevant to this enforcement action.

30.     Although Director Kraninger claims that she has effectively ratified this investigation and enforcement action, Not. of Rat., ECF No. 18, on information and belief, neither President Trump nor his designee has ratified or authorized Director Kraninger to execute the Ratification.

31.     On information and belief, Director Kraninger has attempted to ratify some, though not all, CFPB regulations.  CFPB Rat. of Bureau Actions Rule, 85 Fed. Reg. 133, 41330 (July 10, 2020).  On information and belief, neither President Trump nor his designee has ratified or authorized Director Kraninger to execute the Ratification of Bureau Actions Rule.

---

[24]  CFPB's pending Petition to Enforce against FedChex is attached as Exhibit E.

13

## ARGUMENT

Ms. Moroney's Law Firm opposes CFPB's Amended Petition to Enforce Civil Investigative Demand on four principal grounds, any one of which provides a sufficient basis for this Court to deny the Bureau's Petition: (1) Title X of the Dodd-Frank Act's funding mechanism violates the Appropriations Clause, U.S. Const. art. I, § 9, and the Vesting Clause, U.S. Const. art. I, § 1; (2) ratification cannot cure the unconstitutional harm of Director Kraninger's separation-of-powers violation or, if ratification is appropriate, the Director cannot ratify her own unconstitutional acts; (3) the Second CID impermissibly seeks to regulate the practice of law, to acquire information already in the Bureau's possession, and has not been issued by following the proper administrative procedure; and (4) CFPB failed, under Fed. R. Civ. P. 19, to join a required party to its enforcement action against Ms. Moroney's Law Firm.

## I.  TITLE X OF THE DODD-FRANK ACT IS UNCONSTITUTIONAL BECAUSE IT VIOLATES THE APPROPRIATIONS AND VESTING CLAUSES

The Bureau is unconstitutional because, under Title X of the Dodd-Frank Act, CFPB does not receive its appropriations from Congress.  The Constitution commands that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9.  Congress's responsibility to appropriate, often called "the power of the purse," serves the "fundamental and comprehensive purpose" of "assur[ing] that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good[.]"  *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 427-28 (1990). Alexander Hamilton explained that any deviation from the Article I, § 9 appropriations process is antithetical to the constitutional design:

> The design of the Constitution in this [Appropriations Clause] provision was, as I conceive, to secure these important ends,—that the *purpose*, the *limit*, and the fund of every expenditure should be ascertained by a previous law.  The public security

14

is complete in this particular, if no money can be expended, but for *an object*, to an extent, and *out of a fund*, which the laws have prescribed.

Alexander Hamilton, *Explanation* (Nov. 11, 1795) in *The Works of Alexander Hamilton*, Vol. VII, (John C. Hamilton ed., S.D.N.Y. Clerk 1851) (emphasis in original).

Furthermore, the Vesting Clause of the United States Constitution is unequivocal: "***All*** legislative Powers herein granted shall be vested in a Congress of the United States."  U.S. Const. art. I, § 1 (emphasis added).  Congress may not divest itself of its lawmaking authority. *See Loving v. United States*, 517 U.S. 748, 758 (1996) ("The fundamental precept of the delegation doctrine is that the lawmaking function belongs to Congress, U.S. Const., Art. I, § 1, and may not be conveyed to another branch or entity.").  And as the Supreme Court has recently explained, "[t]he nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government."  *Gundy v. United States*, 139 S. Ct. 2116, 2121 (2019).

Title X of the Dodd-Frank Act unconstitutionally cedes Congress's funding authority to an administrative agency and the President of the United States.  Upon letter-demand from CFPB's Director, the Federal Reserve Board of Governors ***must*** transfer a portion of funds from the combined earnings of the Federal Reserve System (not to exceed 12% annually, plus employment cost index increases) to finance CFPB's operations.  12 U.S.C. § 5497(a)(1)-(2).  And since the Supreme Court's *Seila Law* decision, the final authority on the amount of CFPB's funding is the President, because the President can remove the Director at will.  12 U.S.C. § 5497(a)(1)-(2) *and Seila Law*, 2020 U.S. LEXIS 3515 at *42-43 & 54.

Not only must the Federal Reserve surrender earnings upon the President's demand without any scrutiny or review by the Board of the Federal Reserve, but Title X also ***prohibits*** the Appropriations Committees of the House of Representatives and Senate from reviewing CFPB funding.  12 U.S.C. § 5497(a)(2)(C).  This unprecedented mechanism serves as an

unchecked, self-sustaining Executive Branch funding ecosystem—one that is anathema to the constitutional order of government.  Indeed, the President and the Bureau enjoy *two* layers of financial independence, since Federal Reserve earnings are also not appropriated by Congress.  *See Seila Law*, 2020 U.S. LEXIS 3515 at *16-17 ("Unlike most other agencies, the CFPB does not rely on the annual appropriations process for funding.  Instead, the CFPB receives funding directly from the Federal Reserve, which is itself funded outside the appropriations process through bank assessments.").

As the Supreme Court emphasized just two weeks ago, "'Perhaps the most telling indication of [a] severe constitutional problem' with an executive entity 'is [a] lack of historical precedent' to support it."  *See id.* at *34-35 (discussing the rarity of CFPB's single director for-cause removal).  And there is no historical precedent for CFPB's funding structure.  In rare instances not applicable to the Bureau, some courts have held that there is an Appropriations Clause exception for some (though certainly not all) governmental institutions that receive funding from "fees, assessments, or investments rather than the ordinary appropriations process."  *See PHH Corp. v. CFPB*, 881 F.3d 75, 95 (D.C. Cir. 2018) (*en banc*).  But the exception is narrow, so "'these few scattered examples' … shed little light."  *See Seila Law*, 2020 U.S. LEXIS 3515 at *35 (quoting *NLRB v. Noel Canning*, 573 U. S. 513, 538 (2014)).

For instance, consider the Federal Reserve—the Bureau's benefactor.  Under federal law, the Federal Reserve may "levy semi-annually upon the Federal reserve banks … an *assessment*[.]"  12 U.S.C. § 243 (emphasis added).  Also, the Federal Deposit Insurance Corporation ("FDIC") may require that "[a]ny institution that becomes insured by the [FDIC] … shall pay the [FDIC] any *fee* which the [FDIC] may by regulation prescribe[.]"  12 U.S.C. § 1815(d) (emphasis added).  The National Park Service "may establish, modify, charge, and

collect recreation **fees** at Federal recreational lands and waters[.]"  16 U.S.C. § 6802 (emphasis

added).  And the United States Postal Service may collect "all **revenues** received by the Postal

Service."  39 U.S.C. § 2401(a) (emphasis added).  In each of these examples, fees, assessments,

or investments are collected from users of governmental programs to self-fund those programs—

they are not collected to fund operations at third-party agencies without congressional oversight.

Moreover, in each of these examples, the governmental entities do not have broad investigative

and enforcement authority.  *See Seila Law*, 2020 U.S. LEXIS 3515 at *37 (distinguishing four

"isolated examples" that "d[id] not involve regulatory or enforcement authority remotely

comparable to that exercised by the CFPB.").

   The Bureau, on the other hand, is not self-funded through the collection of "fees,

assessments, or investments" from users or beneficiaries of its products or services.[25]  Rather,

CFPB makes a demand of the Fed, which the Fed cannot refuse, challenge, or modify.  12 U.S.C.

§ 5497(a)(1)-(2).  Moreover, unlike self-funded entities, CFPB administers **18** federal statutes.

12 U.S.C. § 5481.  It also enforces an additional statutory prohibition against "any unfair,

deceptive, or abusive act or practice" in the area of consumer finance.  12 U.S.C. § 5536(a).  To

accomplish this wide-ranging mandate, CFPB may promulgate binding regulations.  *See*

12 U.S.C. §§ 5531 & 5581.  Two weeks ago, the Supreme Court noted that

> Congress also vested the CFPB with **potent** enforcement powers.  The agency has
> the authority to conduct investigations, issue subpoenas and civil investigative
> demands, initiate administrative adjudications, and prosecute civil actions in
> federal court.  §§ 5562, 5564(a), (f).  To remedy violations of federal consumer

---

[25]  The Federal Housing Finance Agency ("FHFA"), for example, is currently pending before the Supreme Court, *Collins v. Mnuchin*, No. 19-422 (cert. granted July 9, 2020), and despite FHFA's similar constitutional structure, its funding mechanism differs from CFPB in that it is self-funded through assessments levied against regulated entities, not a demand on the Federal Reserve.  12 U.S.C. § 4516(a).  Moreover, unlike CFPB, FHFA "regulates primarily Government-sponsored enterprises, not purely private actors."  *Seila Law*, 2020 U.S. LEXIS 3515 at *37.  The Supreme Court will hear arguments regarding: (1) whether FHFA's single-director structure violates the separation of powers; and (2) whether the courts must set aside a final agency action that FHFA took when it was unconstitutionally structured and strike down the statutory provisions that make FHFA independent. Pet. for Writ of Cert., *Collins v. Mnuchin*, No. 19-422 (Sept. 25, 2019).

17

> financial law, the CFPB may seek restitution, disgorgement, and injunctive relief, as well as civil penalties of up to $1,000,000 (inflation adjusted) for each day that a violation occurs. §§ 5565(a), (c)(2); 12 CFR § 1083.1(a), Table (2019).
>
> * * *
>
> The CFPB's rulemaking and enforcement powers are coupled with extensive adjudicatory authority. The agency may conduct administrative proceedings to "ensure or enforce compliance with" the statutes and regulations it administers. 12 U.S.C. § 5563(a). When the CFPB acts as an adjudicator, it has "jurisdiction to grant any appropriate legal or equitable relief." §5565(a)(1). The "hearing officer" who presides over the proceedings may issue subpoenas, order depositions, and resolve any motions filed by the parties. 12 CFR §1081.104(b).

*Seila Law*, 2020 U.S. LEXIS 3515 at *15-16 (emphasis added). No other government agency has this much power to regulate, investigate, and punish, while simultaneously enjoying the authority to fund itself behind the veil of two layers of financial independence from Congress.

Prior to the Supreme Court's decision in *Seila Law*, these dual layers of protection (constitutional or not) were at least consistent with Congress's original conception of CFPB as an agency independent of executive and legislative control. But *Seila Law* has made the Bureau's Director removable at will, so Title X now provides the ***President*** unfettered access to, and control over, 12% of annual Federal Reserve receipts—$695.9 million in FY2020. CFPB CFO Update (Mar. 16, 2020) available at https://files.consumerfinance.gov/f/documents/cfpb_cfo-update_report_fy-2020_q1.pdf. And since "the CFPB Director has the authority to bring the coercive power of the state to bear on millions of private citizens and businesses, imposing even billion-dollar penalties[,]" so too now does the President. *Seila Law*, 2020 U.S. LEXIS 3515 at *34.

This unchecked authority is not only inconsistent with the congressional statutory design and purpose, but it is inconsistent with our constitutional design and purpose. The Founders vested Congress with control over spending and lawmaking. *Seila Law*, 2020 U.S. LEXIS 3515 at *41 (recognizing that "[t]he Director does not even depend on Congress for annual

18

appropriations" and warning that "the 'power over the purse' [i]s the 'most compleat [*sic*] and effectual weapon' in representing the interests of the people[.]") (quoting The Federalist No. 58, at 394 (J. Madison)).  But the portions of Title X that survived the Supreme Court's blue-penciling in *Seila Law* permit the President to determine and direct CFPB's funding and budget, as well as "the authority to promulgate binding rules fleshing out 19 federal statutes," plus wield CFPB's "potent enforcement powers."  *See Seila Law*, 2020 U.S. LEXIS 3515 at *33, 15.  Unconstrained by our constitutional checks and balances, these powers consolidated in the Executive Branch can now be used by a President—this President and his successors—or abused for political ends.

Title X does not fund CFPB through the constitutionally prescribed process of congressional enactment *via* bicameralism and presentment.  *Compare* U.S. Const. art. I, §§ 9, 1 & 7 *with* 12 U.S.C. § 5497.  Could Congress simply direct that all Federal Reserve funds are to be used at the direction of the President?  This would turn the entire constitutional structure on its head.  Having the President direct 12% of those funds causes the same kind of constitutional harm, albeit to a lesser degree.  Thus, since CFPB does not fit one of the narrow exceptions for self-funded governmental entities, and since CFPB's funding comes from another entity that does not receive appropriations from Congress, the Bureau's funding is unconstitutional.

II.   **DIRECTOR KRANINGER'S PURPORTED RATIFICATIONS ARE INEFFECTUAL BECAUSE AN INVALID AGENT'S ACTS ARE VOID *AB INITIO*, OR IN THE ALTERNATIVE, INVALID ACTS MAY ONLY BE RATIFIED IN A DETACHED AND CONSIDERED MANNER BY SOMEONE WHO WAS A VALID PRINCIPAL AT THE TIME THE UNCONSTITUTIONAL ACTS OCCURRED**

   A.   **The Director's Invalid Acts Are Nullities that Cannot Be Ratified**

Even if CFPB is constitutionally funded (which it is not), the Bureau's Second CID is invalid because the Demand is the product of an unconstitutionally structured federal agency.  In

*Seila Law*, the Supreme Court used "a scalpel rather than a bulldozer" to sever the for-cause removal provision in Title X, allowing CFPB for now to "remain fully operative without the offending tenure restriction." *Seila Law*, 2020 U.S. LEXIS 3515 at *58 & 54.  But severance was ***prospective***.  Indeed, the Court remanded the question regarding whether the Bureau validly ratified the petitioner's CID to the Court of Appeals.  *Id.* at *59.  Chief Justice Roberts explained that whether ratification occurred or whether ratification is legally sufficient to cure the Bureau's constitutional defects is a case-specific factual and legal question for lower courts to decide.  *See id.* at *50-51.  Also, "whether and when the temporary involvement of an unconstitutionally insulated officer in an otherwise valid prosecution requires dismissal … is best resolved by the lower courts in the first instance."  *Id.* at *52 n.12.

In his dissent, Justice Thomas explained that "the enforcement of a civil investigative demand by an official with unconstitutional removal protection injures [the petitioner]."  *Id.* at *134 (Thomas, J., dissenting).  Where the *Seila Law* Court instructs lower courts to resolve the issue of ratification, Justice Thomas would have resolved the matter directly: "Presented with an enforcement request from an unconstitutionally insulated Director, I would simply deny the CFPB's petition for an order of enforcement."  *Id.*  He reasoned that the constitutional harm created by an unconstitutionally insulated Director makes ratification impossible.  *Id.* at *136 ("[A]lleged ratification does not cure the constitutional injury—enforcement of an investigative demand by an unconstitutionally insulated Director.").  Thus, "[r]egardless of whether the CFPB's ratification theory is valid, the Court of Appeals on remand must reach the same outcome: The CFPB's civil investigative demand cannot be enforced against [the petitioner]."  *Id.* at *134.[26]

_____

[26]  Moreover, ratification would deprive Ms. Moroney's Law Firm of ***any*** remedy for CFPB's constitutional violation and vindication of her claim that the Bureau was unconstitutionally structured in the related

In *Lucia v. SEC*, 138 S. Ct. 2044 (2018), the Supreme Court required a different ALJ or the Commission to start its process over "to cure the constitutional error" of the ALJ's unconstitutional appointment in an entirely new hearing. *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018). Similarly, in an enforcement action, Ms. Moroney's Law Firm is entitled to a judicial remedy that provides genuine relief from the injurious prior acts of an unconstitutionally insulated Director. *See FEC v. NRA Political Victory Fund*, 6 F.3d 821, 828 (D.C. Cir. 1993) ("[Where a party] raise[s] the constitutional challenge as a defense to an enforcement action, [] we are aware of no theory that would permit us to declare the Commission's structure unconstitutional without providing relief[.]"). Prior to filing this enforcement action, the Director approved serving the Second CID on November 14, 2019 and considered—and denied—the Law Firm's Petition to Set Aside or Modify on February 11, 2020. At all times relevant to this enforcement action, the Director was an invalid agent, acting without any authority whatsoever. Her acts are void *ab initio* and cannot be saved through ratification. Thus, the Court should refuse to enforce the Second CID.

**B.    Alternatively, if an Invalid Agent's Acts May Be Ratified, They May Only Be Ratified by Someone Who Was a Valid Principal at the Time the Acts Occurred**

If it is at all possible to ratify the acts of an unconstitutionally insulated Director, the Second CID is nevertheless unenforceable. The Director's purported ratification cannot cure the structural constitutional defect identified by the Supreme Court. As this Court has recently

---

case, *Law Offices of Crystal Moroney, P.C. v. CFPB*, No. 719-cv-11594-KMK. Respondent cannot be so deprived. The purpose of separation-of-powers challenges is "to preserve individual freedom." *Morrison v. Olson*, 487 U.S. 654, 727 (1988) (Scalia, J., dissenting). The Supreme Court has explained that remedies for separation-of-powers violations must advance both the Constitution's structural purposes and create incentives to bring such challenges. *Lucia*, 138 S. Ct. at 2055 n.5. Thus, actions taken by unconstitutionally structured agencies must be nullities. Any other result would mean that a successful separation-of-powers challenge will not receive *any* relief, and enforcement actions started by agencies with unconstitutional structures will proceed with impunity, as if never found unconstitutional. That result would also all-but-eliminate any disincentive for federal actors to create and perpetuate unconstitutional structures.

21

explained, "[r]atification addresses situations in which an agent was without authority at the time he or she acted and the ***principal*** later approved of ***the agent's prior unauthorized acts***." *RD Legal Funding*, 332 F. Supp. 3d at 785 (emphasis added). *See also* Restatement (Second) of Agency § 87 (Am. Law Inst. 1958) ("To become effective as ratification, the affirmance must be by the person identified as the principal at the time of the original act or, if no person was then identified, by the one for whom the agent intended to act.") *and* Restatement (Third) of Agency § 3.04(1) (Am. Law Inst. 2006) ("An individual has capacity to act as principal in a relationship of agency … if, at the time the agent takes action, the individual would have capacity if acting in person."). Despite reserving the ultimate question of the validity of ratification to lower courts, the *Seila Law* Court was clear in deciding the predicate to answering that question: The Bureau's only lawfully acting principal ***prior*** to severing the for-cause removal provision was the President of the United States. *See Seila Law*, 2020 U.S. LEXIS 3515 at *59 ("In our constitutional system, the executive power belongs to the President, and that power generally includes the ability to supervise and remove the agents who wield executive power in his stead."). In fact, Director Kraninger is perpetuating the separation-of-powers violation by purporting to ratify her past unconstitutional acts.

Hence, only the ***President*** can ratify the unconstitutionally insulated acts of pre-*Seila Law* Directors, but he has not done so. Going forward, the now-constitutional Director may decide to investigate Ms. Moroney's Law Firm (assuming, *arguendo*, that CFPB is constitutionally funded, which it is not), but the Director was not a valid principal of the Bureau's authority to investigate the Law Firm or adjudicate her Petition to Modify or Set Aside the CID, in the first instance. Thus, since ratification by the Director is invalid, this Court should refuse to enforce the Second CID.

C.   **Neither the Bureau's Regulations, nor Its Related Guidance Documents, upon Which the Bureau Relies for Authority to Investigate the Law Firm, Have Been Validly Ratified**

Even if a formerly unconstitutionally insulated Director could ratify her prior unconstitutional exercise of authority (which she cannot), and even if the Director validly ratified the investigative process and this enforcement action (which she has not), the Director has not notified this Court or the Law Firm that she has ratified the regulations or related guidance documents[27] upon which CFPB relies for authority to investigate Ms. Moroney's Law Firm or to bring this enforcement action.  *See* Not. of Rat., ECF No. 18.  The reason may be that she did not purport to ratify CFPB regulations until a week ***after*** she ratified this enforcement action.

It appears that on July 10, 2020, the Federal Register posted a document that the Federal Register identifies as a "rule," entitled, "Ratification of Bureau Actions."  CFPB Rat. of Bureau Actions Rule, 85 Fed. Reg. 133, 41330 § II.  The rule purports to ratify "[e]ach document published by the Bureau in the 'Rules and Regulations' category of the Federal Register," except two regulations not relevant to this matter, and other documents which appear to be guidance documents.  *See* CFPB Rat. of Bureau Actions Rule, 85 Fed. Reg. 133, 41330.  Assuming, for the sake of argument, that the Director's July 10th ratification (signed July 7, 2020) of Bureau regulations is valid, her July 2nd ratification (signed July 1, 2020) of this investigation and enforcement action must be amended because she could not have attained the regulatory authority to ratify this case until July 10th, at the earliest.

More to the point, CFPB's new rule is not a valid ratification of its regulations or guidance documents.  Its reliance in the Federal Register on the D.C. Circuit Court case of *State*

---

[27]   To be clear, a "guidance document" is "an agency statement of general applicability, intended to have future effect on the behavior of regulated parties, that sets forth a policy on a statutory, regulatory, or technical issue, or an interpretation of a statute or regulation[.]"  *See* Exec. Order No. 13891, 84 Fed. Reg. 199, 55235 § 2 (Oct. 9, 2019).

*Nat'l Bank of Big Spring v. Lew*, 197 F. Supp. 3d 177 (D.C. Cir. 2016), is misplaced.  In *State National Bank*, the court reasoned that since Director Cordray's unconstitutional appointment was replaced with his constitutional appointment, "there is even less reason here to believe that forcing him to restart the notice-and-comment process—or even to go through the motions of a nominal 'reconsideration'—would change the outcome in any way."  *State Nat'l Bank of Big Spring v. Lew*, 197 F. Supp. 3d 177, 183 (D.C. Cir. 2016).  The facts of Director Kraninger's situation are similar only in that the valid director who replaced the invalid one was the same person.  But the authority dynamics of Director Kraninger's situation are entirely different. Here, the Director's ***appointment*** was not the problem—her insulation from ***removal*** was the problem.  So, the concern is not whether Director Kraninger would choose to adopt all ***her*** own prior actions, but rather whether she acted in a manner consistent with how the only lawfully acting ***principal*** would have acted.  This case is different from *State National Bank*, where the court could not conceive any reason to believe that Director Cordray would have acted any differently based on his appointment status.  In a removal case such as this, the difference in behavior of the invalidly authorized and insulated Director is the point of the constitutional challenge, and that insulation from the principal directly manifests the constitutional harm suffered by Ms. Moroney's Law Firm.

        In other words, unlike Director Cordray's appointment, Director Kraninger's appointment was valid, but her independent ***authority*** was invalid.  Upon valid appointment, the *State National Bank* court assumed that Director Cordray was still, "other than the President, … the single most powerful official in the entire U.S. Government, at least when measured in terms of unilateral power."  *PHH Corp.*, 881 F.3d at 171 (Kavanaugh, J., dissenting).  Little changed for him, in the court's eyes.  That is not the case for Director Kraninger, who is now directly

answerable to the President.  The entire dynamic of her office is such that additional

consideration and ratification procedures are necessary before CFPB may properly act upon its

regulations and guidance documents, to say nothing of enforcement decisions.[28]  Thus, the only

valid principal throughout the time of Director Kraninger's unconstitutional insulation from

removal was the President, so if anyone can ratify prior invalid Bureau regulations, guidance

documents, and enforcement activities, only the President can.  To Respondent's knowledge, he

has not done so.

> **D.**    ***Ultra Vires* Acts, Such as Those that Violate the Separation of Powers, Cannot Be Ratified with the Wave of a Hand—Ratification Must Be "Detached and Considered"**

Federal officials—even valid principals—cannot retroactively affirm *ultra vires* acts

without examining the invalid acts' propriety.  Were it otherwise, the Supreme Court's *Seila Law*

separation-of-powers decision and the President's Article II removal and Take Care Clause

powers would be reduced to "mere demarcation[s] on parchment."  *See* The Federalist No. 48,

at 313 (J. Madison) (Clinton Rossiter ed., 1961) (explaining the importance of "provid[ing] some

practical security for each [branch of government], against the invasion of the others.").  Director

Kraninger and her predecessors were invalid agents of the President before June 29, 2020.

Director Kraninger was not then, nor is she now, a valid principal capable of ratifying her prior

*ultra vires* acts.  *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111,

117 (D.C. Cir. 2015) (holding that ratification of a prior, invalid action requires "a subsequent

determination" by "a properly appointed official" who "has the power to conduct an independent

---

[28]  There is also an open question as to whether CFPB is using its guidance documents consistent with prior Executive Orders that may not have been applicable to the Bureau prior to June 29, 2020.  *See, e.g.*, Exec. Order No. 13891, 84 Fed. Reg. 199, 55235 (Oct. 9, 2019) ("Promoting the Rule of Law Through Improved Agency Guidance Documents") *and* Exec. Order No. 13892, 84 Fed. Reg. 199, 55239 (Oct. 9, 2019) ("Promoting the Rule of Law Through Transparency and Fairness in Civil Administrative Enforcement and Adjudication").

evaluation of the merits and does so.").  But even the President could not ratify any of the prior

CFPB directors' acts without thoughtfully reviewing them first.

Ratification of prior *ultra vires* acts requires "a detached and considered judgment" of the

invalid acts in question.  *See Intercollegiate Broad. Sys.*, 796 F.3d at 118 (quoting *Doolin Sec.*

*Sav. Bank, F.S.B. v. Ofc. of Thrift Supervision*, 139 F.3d 203, 213-14 (D.C. Cir. 1998) (internal

quotations omitted)).  In *Advance Disposal Servs. East, Inc. v. NLRB*, 820 F.3d 592 (3d Cir.

2016), the NLRB successfully ratified the prior *ultra vires* acts of an improperly appointed

NLRB Regional Director by demonstrating that the validly reappointed Regional Director had

undertaken a "detached and considered affirmation" of his previous action.  *Advance Disposal*

*Servs. East, Inc.*, 820 F.3d at 603.

Even if Director Kraninger was a valid principal prior to *Seila Law* (which she was not),

her ratifications are invalid because she did not give the prior invalid acts more than a passing

glance.  For her ratifications to be valid, Director Kraninger would have to affirm that over the

course of just **two days** after *Seila Law*, she reviewed all filings, documentation, arguments,

findings, and decisions associated with Ms. Moroney's Law Firm's two-CID and **three-year long**

engagement with the Bureau, and used her detached and considered judgment to decide that this

enforcement action should continue.[29]  *See* Kraninger Ratification, ECF No. 18-1, ¶ 4 (alleging

merely that she "considered the basis for the Bureau's decisions to issue the civil investigative

demand to Respondent, to deny Respondent's request to modify or set aside the CID, and to file

a petition requesting that the district court enforce the CID.").  Notably, Director Kraninger does

not allege that she reviewed the First CID, the filings and decisions in that case, the decision to

moot the First Show Cause Hearing, the documents submitted pursuant to the First CID, the

---

[29] On information and belief, in the first two days after *Seila Law*, the Second CID was not the only
enforcement action purportedly ratified by Director Kraninger.

filings associated with the CFPB-identified related case (*Law Offices of Crystal Moroney, P.C. v. CFPB*, No. 719-cv-11594-KMK), the documents and information produced by Follett, or the details associated with the related (though not acknowledged as related by CFPB) enforcement action against FedChex.  Director Kraninger clearly did not accomplish a detached and considered affirmation of this enforcement action in its entirety.

Nor did Director Kraninger, over the course of the next ***six days***, review all the regulations, guidance documents, and supporting documentation associated with each, that accumulated over the ***ten years*** the director position has been unconstitutionally insulated from removal.  *See* CFPB Rat. of Bureau Actions Rule, 85 Fed. Reg. 133, 41330-31 § IV (executed by Dir. Kraninger on July 7, 2020).  That would be impossible.  Thus, since no one has engaged in a thoughtful process of detached and considered judgment of the Bureau's directors' acts while they were unconstitutionally insulated from removal, this Court should refuse to enforce the Second CID.

III.    **THE SECOND CID IS UNENFORCEABLE, IN WHOLE OR IN PART, BECAUSE IT IMPERMISSIBLY SEEKS INFORMATION RELATED TO THE PRACTICE OF LAW, IT SEEKS DOCUMENTS ALREADY IN CFPB'S POSSESSION, AND CFPB HAS NOT FOLLOWED PROPER ADMINISTRATIVE PROCEDURE IN PURSUING THE INVESTIGATION**

Even if CFPB is constitutionally funded (which it is not), and even if the Director can ratify her own actions taken while unconstitutionally insulated from removal (which she cannot), the Bureau's Second CID is still unenforceable because it is unreasonable.  "Where an administrative agency seeks the aid of a court in enforcing its order, the court must not permit its process to be abused."  *United States v. Associated Merchandising Corp.*, 261 F. Supp. 553, 560 (S.D.N.Y. 1966) (citing *United States v. Powell*, 379 U.S. 48, 58 (1964)).  Moreover, "[i]t is clear, even in the investigative cases, that respondents may object to the subpoena on the ground of relevance and upon the ground of oppressiveness, *i.e.*, the undue burden of compliance."

*Associated Merchandising Corp.*, 261 F. Supp. at 560 (citing *FTC v. Am. Tobacco Co.*, 264 U.S. 298, 307 (1924)).  *See also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ("[A] governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power.") (internal citations omitted).

A federal agency, such as CFPB, may investigate without probable cause but it may not "conduct any investigation it may conjure up; the disclosure sought must always be reasonable." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 471 (2d Cir. 1996) (citing *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 209 (1946)).

> This limitation of reasonableness is satisfied "so long as an agency establishes that an investigation 'will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within [its] possession, and that the administrative steps required … have been followed.'"

*Constr. Prods. Research, Inc.*, 73 F.3d at 471 (quoting *SEC v. Wall St. Transcript Corp.*, 422 F.2d 1371, 1375 (2d Cir. 1970) (quoting *Powell*, 379 U.S. at 57-58)).  The Second CID seeks information that is not relevant to a legitimate purpose; some of the information sought is already within CFPB's possession; and CFPB has not followed the required the administrative steps in its investigation of Ms. Moroney's Law Firm.

A. **To the Extent that the Second CID Seeks Information Implicating the Practice of Law, the Second CID Does Not Seek Information Relevant to a Legitimate Purpose**

The Bureau's jurisdiction is expansive, but it does not include regulating the practice of law.  Indeed, Congress did not intend for CFPB "to act as a federal version of the state bar authorities."  *CFPB v. Mortg. Law Grp., LLC*, 157 F. Supp. 3d 813, 825 (W.D. Wis. 2016).  Congress was clear on this point, commanding that "[t]he Bureau ***may not exercise any supervisory or enforcement authority*** with respect to an activity engaged in by an attorney ***as***

28

*part of the practice of law* under the laws of a State in which the attorney is licensed to practice law." 12 U.S.C. § 5517(e)(1) (emphasis added).  That is not to say that CFPB cannot demand of an attorney, whose services implicate one of the 19 statutes administered by CFPB, or who may engage in unfair or deceptive collection practices, documents and information related to his or her engagement with financial consumers—of course, it may.  *See* 12 U.S.C. § 5517(e)(2).

CFPB cannot, however, interfere with attorney-client relationships or demand from an attorney documents or information that is confidential or privileged between attorney and client.[30]  Such is the circumstance presented in this case, where Petitioner seeks to compel disclosure of client documents and information which Respondent, an attorney, has an ethical obligation to keep confidential.  The Bureau does not—because it could not—allege that Ms. Moroney's Law Firm's contacts and communications with clients took place outside the attorney-client relationship.  Nor does the Amended Petition allege waiver of confidences or privilege.

The Second CID's stated purpose is to determine whether the Law Firm has been responsive to consumers who provide information contradictory to the Law Firm's record of consumers' debt, and whether the Law Firm corrects its records and makes required reports in such instances.  *See* Am. Pet. to Enforce CID, ECF No. 6, ¶ 1.  This purpose is irrelevant to the attorney-client confidences and privileged information withheld by Ms. Moroney's Law Firm. Even aside from the limits on CFPB's jurisdiction in 12 U.S.C. § 5517(e), CFPB would still not be entitled to confidential and privileged documents.

---

[30] The Department of Justice explicitly instructs its attorneys *not* to ask for attorney-client privileged information.  *See* Mark Filip, Dept. of Justice Dep. Att'y Gen., Memo. to U.S. Attorneys (Aug. 28, 2008).  The Bureau should adopt this practice.

The Supreme Court has explained that one limitation on an agency's broad authority to issue administrative subpoenas is determined by whether the agency could fully perform its statutory duty without the information demanded.  *See Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 507-08 (1943).  While the facts of the Supreme Court case of *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501 (1943), are very different from the facts in this case (for example, *Endicott Johnson* involved a government contractor, not a law firm, and the contractor had admitted to prior wrongdoing, where the Law Firm has not been even accused of wrongdoing), the Supreme Court sets forth an important principle.  In that case, a government contractor argued that the Secretary of Labor's administrative subpoena for certain payroll information was unenforceable because it was irrelevant to the minor violations discovered by the Department of Labor.  *See id.* at 505-06.  The Court reasoned that one of the Secretary's principal functions is to decide questions of fact regarding government contractors who are ineligible for awards after a labor violation.  *See id.* at 507-08.  Furthermore, information regarding payrolls and underpayments was "clearly related" to the violation.  *See id.* 508.  Therefore, the Secretary could issue an administrative subpoena to collect the information necessary to render a complete decision on the contractor's alleged violations—because "[t]he evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the Secretary[.]"  *Id.* at 509.

Thus, a critical question regarding whether the scope of CFPB's administrative subpoena is reasonable, is: Can CFPB fully perform its statutory duty without the attorney-client confidences and privileged materials that CFPB demands in this enforcement action?  The answer to this question is an emphatic ***yes***.  Client confidences and privileged materials are "plainly incompetent or irrelevant" to any conceivable "lawful purpose" of the Director or the Bureau.  *See id.*  The Law Firm substantially complied with the First CID by providing written

30

responses to interrogatories and by producing thousands of pages of documents and data.  The

documents and data covered all issues under investigation in the First and Second CIDs, and

included the Law Firm's policies, procedures, data, reports, and contact with third parties—

including debtors.  Nevertheless, CFPB asks this Court to order disclosure of material related to

the Law Firm's contact with its *clients*.  The Bureau's overbroad, unfettered, and wholesale

request for information relating to the Law Firm's representation of its clients is patently

improper.

If CFPB seeks information as to the credit-granting or debt-collection practices of the

Law Firm's clients, the Bureau can generate a tailored request to one or more clients seeking

specific information.  Indeed, it already has done so, at least with respect to FedChex, if not

others.  CFPB, however, should not be permitted to serve, much less enforce, a CID on a *law

firm* and reach the universe of information that the Law Firm possesses relating to the

representation of its clients, to include an expansive number of documents that the Law Firm is

duty-bound to keep confidential.  Thus, since attorney-client confidences and privileged material

are excluded from CFPB's jurisdiction, and since they are plainly irrelevant to any lawful

purpose of the Director or CFPB, this Court should deny enforcement of the Second CID to the

extent that it seeks material related to the practice of law.

**B.  To the Extent that the Second CID Seeks Information Already Within the Bureau's Possession, the Second CID Is Invalid**

Ms. Moroney's Law Firm has already supplied many, if not most, of the documents and

information sought by this enforcement action.  The Bureau freely admits that it may only seek

enforcement of a CID where the Bureau does not already have the information in its possession.

Am. Pet. to Enforce CID, ECF No. 6, ¶ 11.  Yet, the Bureau is wrong to allege that the materials

sought by the Second CID are "not already in the Bureau's possession."  Am. Pet. to Enforce

31

CID, ECF No. 6, ¶ 14. CFPB admits that, "[w]hile the prior CID sought **substantially the same set of materials** requested by the 2019 CID, the two CIDs were not identical." Mem. in Support of Am. Pet. at 2-3 (emphasis added).

Furthermore, the Petition admits that Ms. Moroney's Law Firm "had submitted only **partial responses** to the prior CID[.]" *Id.* at 3 (emphasis added). While the parties have a genuine dispute regarding the lawful scope of the Second CID, it is disingenuous for the Bureau to ask this Court to issue an order to the Law Firm "to comply fully with the civil investigative demand," *Id.* at 1, where the Bureau already has a substantial portion of the information in its possession. Instead of seeking enforcement of the portions of the First and Second CIDs that were dissimilar, CFPB is impermissibly asking this Court to order the Law Firm to duplicate its prior submission.

CFPB tries to gloss over this important point with feeble process arguments that could have been argued at the First CID Show Cause Hearing in November 2019, had CFPB not unilaterally withdrawn the First CID. For instance, the Bureau complains that the prior submission was not "in a format the Bureau could accept." *Id.* at 3 (citing Assae-Bille Decl., ¶ 8 (Apr. 24, 2020)). Implicit in this argument is an admission that CFPB possesses the materials the Law Firm submitted. And CFPB does not explain how the Law Firm's submission of materials in the nonproprietary, fully accessible format in which they are kept in the ordinary course of business is somehow the same as CFPB not having the documents in its possession. Further, the Bureau claims that the Law Firm "never certified that any responses it produced were true and complete, as the [First] CID required." *Id.* at 3 (citing Assae-Bille Decl., ¶ 8 (Apr. 24, 2020)). Again, this is a minor procedural issue that does not contradict the fact that CFPB

already has in its possession many of the documents of which it asks this Court to order production.

CFPB also claims that it does not have in its possession "responses to interrogatories" or "written reports."  Am. Pet. to Enforce CID, ECF No. 6, ¶ 14.  The Amended Petition to Enforce does not explain what the Bureau did with the Law Firm's prior responses—let alone attempt to offer a process defect that would render answers already provided unreadable or otherwise nonconforming.  Moreover, CFPB has also conveniently omitted the fact that, to the extent that CFPB seeks documents related to Follett Corporation, Follett complied with CFPB's request on or about March 12, 2020.  Thus, the Second CID is unenforceable because it includes information already in its possession.  And by demanding production of documents and responses to interrogatories already in its possession, CFPB's Second CID is *per se* overly broad and unduly burdensome.  The Bureau should have reviewed the previously submitted information and if it was not sufficient to the Bureau's investigation, it should have only requested the information not in its possession.

## C.  The Second CID Is Invalid Because the Bureau Has Not Followed the Required Administrative Steps in Issuing the Second CID, in Conducting Its Investigation and Adjudication of the Second CID, or in Enforcing the Second CID in this Court

As explained in Argument § II above, even if it is possible to ratify the acts taken in violation of the separation of powers, the Director has not effectuated a valid ratification of: (i) the Second CID; (ii) her Decision and Order denying the Law Firm's Petition to Set Aside that CID; (iii) her Amended Petition to Enforce the Second CID; (iv) relevant CFPB regulations; or (v) relevant guidance documents.  The Bureau's only lawfully acting principal *prior* to severing the for-cause removal provision was the President of the United States.  *See Seila Law*, 2020 U.S. LEXIS 3515 at *49.  Only the President can ratify the unconstitutionally insulated acts of

the pre-*Seila Law* Director, but he has not done so.  Thus, the Bureau has not followed the required administrative steps to proceed with enforcement of the Second CID in this Court.

**IV.    THIS COURT SHOULD DENY ENFORCEMENT OF THE SECOND CID BECAUSE THE BUREAU FAILED TO JOIN A REQUIRED PARTY TO ITS ENFORCEMENT ACTION AGAINST THE LAW FIRM**

If this Court proceeds to decide the validity of the Second CID itself, enforcement should be denied because CFPB failed to join a required party to this enforcement action.  CFPB is currently seeking to enforce a CID against FedChex in the Central District of California.  *CFPB v. FedChex Recovery, LLC*, Case No. 8:20-mc-10-JLS-KES, ECF No. 1 (C.D. Cal. June 9, 2020).  FedChex's confidential and privileged information is implicated by this Court's decision to enforce or quash the Second CID.  Some of that same information is implicated by the California case.  FedChex must be present in this Court to defend its interests.  Fed. R. Civ. P. 19 states:

> **(a) Persons Required to Be Joined if Feasible.**
> **(1)** *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
> **(2)** *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.
> **(3)** *Venue.* If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

Fed. R. Civ. P. 19 (bold and italic typefaces in original).

On information and belief, the Law Firm's clients are "subject to service of process," and "joinder will not deprive the court of subject-matter jurisdiction[.]"  *See* Fed. R. Civ. P. 19(a)(1). Moreover, this Court "cannot accord complete relief" as requested by Petitioner without this party because it—not the Respondent—owns documents and information withheld from CFPB in the Law Firm's responses to the First CID, and at the core of the Law Firm's refusal to cooperate with the Second CID.

If this Court orders Respondent to fully comply with the Second CID, the order will, "as a practical matter impair or impede [FedChex]'s ability to protect the interest[,]" and leave the Law Firm exposed "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest [of its client]."  *See* Fed. R. Civ. P. 19(a)(1)(A)-(B).  Thus, if CFPB wishes to enforce the Second CID as to FedChex's confidential and privileged materials, CFPB must join it as a party to this action, to the extent feasible under Fed. R. Civ. P. 19.

<u>**CONCLUSION**</u>

For the foregoing reasons, Respondent respectfully requests that this Court: (1) declare CFPB unconstitutional as funded and enjoin CFPB from seeking and receiving any further funding outside the Appropriations Clause process; (2) declare that the Bureau's actions while its Director was unconstitutionally insulated from removal cannot be ratified or, if the actions may be ratified, that the only valid principal capable of ratifying the Bureau's prior actions is the President; (3) deny enforcement of the Second CID to the extent that it seeks to regulate the practice of law, that it seeks information already in CFPB's possession, and that CFPB has not followed the required administrative procedures; (4) if the Court reaches the validity of CFPB's Second CID, order CFPB to join all parties with an interest in the enforcement of the Second CID; and (5) for any other relief that the Court may deem just and proper.

Respectfully submitted,

Dated:  July 15, 2020

Michael P. DeGrandis, *pro hac vice*
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
tel.: (202) 869-5210
mike.degrandis@ncla.legal

*Counsel to Respondent*
*Law Offices of Crystal Moroney, P.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2020, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's CM/ECF system upon all counsel of record in the above-captioned case.  Courtesy copies will also be emailed to the Defendants.

Michael P. DeGrandis

## INDEX OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | *Seila Law LLC v. CFPB*, 2020 U.S. LEXIS 3525, 2020 WL 3492641 |
| B | Feb. 2, 2020 Decision and Order (Second CID) |
| C | Oct. 2, 2017 R. Canter Letter re: Schedule of Withheld Documents |
| D | Mar. 12, 2020 M. Sproat E-mail re: Follett CID Response |
| E | June 9, 2020 Petition to Enforce CID Against FedChex Recovery, LLC |