**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BUREAU OF CONSUMER FINANCIAL
PROTECTION,

      Petitioner,

      v.

LAW OFFICES OF CRYSTAL MORONEY,
P.C.,

      Respondent.

Case No. 7:20-cv-03240-KMK

---

**PETITIONER'S REPLY TO RESPONDENT'S**
**RESPONSE TO ORDER TO SHOW CAUSE**

Thomas G. Ward
    *Enforcement Director*
Deborah Morris
    *Deputy Enforcement Director*
Alusheyi Wheeler
    *Assistant Deputy Enforcement Director*
E. Vanessa Assae-Bille
Jehan A. Patterson
Kevin E. Friedl
    *Attorneys*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, D.C. 20552

# TABLE OF CONTENTS

I.      Introduction ................................................................................................................. 1

II.     There Is No Constitutional Impediment to Enforcing the CID........................................... 1

        A.      *Seila Law* Fully Resolved the Question of the Bureau's Constitutionality. .............. 1

        B.      The Director's Ratification Resolved Any Issue with the Filing of This Case. ........ 4

III.    The Attorney-Client Privilege Does Not Preclude Enforcement of the CID..................... 9

IV.     LOCM's Partial Response to the 2017 CID Does Not Preclude

        Enforcement of this CID. ............................................................................................... 14

V.      Rule 19 Is Inapplicable to This Proceeding, and In Any Event,

        FedChex Is Not a Necessary   Party to this Action......................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Advanced Disposal Servs. East, Inc. v. NLRB*,
820 F.3d 592 (3d Cir. 2016).................................................................................. 8

*Am. Fed'n of Gov't Emps., AFL-CIO, Local 1647 v. FLRA*,
388 F.3d 405 (3d Cir. 2004).................................................................................. 3

*Application of Sarrio, S.A.*,
119 F.3d 143 (2d Cir. 1997)................................................................................ 16

*Avoletta v. Danforth*,
2012 WL 3113151 (D. Conn. July 31, 2012) .................................................. 11, 14

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
140 S. Ct. 2335 (2020)......................................................................................... 7

*CFPB v. Gordon*,
819 F.3d 1179 (9th Cir. 2016) ...................................................................... 5, 6, 8

*Cincinnati Soap Co. v. United States*,
301 U.S. 308 (1937).............................................................................................. 3

*Doolin Sec. Sav. Bank, F.S.B. v. Off. of Thrift Supervision*,
139 F.3d 203 (D.C. Cir. 1998).............................................................................. 5

*FEC v. Legi-Tech, Inc.*,
75 F.3d 704 (D.C. Cir. 1996)....................................................................... 5, 6, 8

*FEC v. NRA Political Victory Fund*,
6 F.3d 821 (D.C. Cir. 1993)................................................................................. 5

*In re Alghanim*,
2018 WL 2356660 (S.D.N.Y. May 9, 2018) ...................................................... 9

*In re Christensen*,
2006 WL 278169 (S.D.N.Y. Feb. 3, 2006)........................................................ 10

*Khan v. Midland Funding LLC*,
956 F. Supp. 2d 515 (S.D.N.Y. 2013)................................................................ 11

*LOCM v. CFPB*,
No. 7:19-cv-11594-KMK (S.D.N.Y.) ................................................................. 2

*Off. of Pers. Mgmt. v. Richmond,*
496 U.S. 414 (1990) ............................................................................................. 3, 4

*Ratliff v. Davis Polk & Wardwell,*
354 F.3d 165 (2d Cir. 2003) ................................................................................. 12

*S.E.C. v. Yorkville Advisors, LLC,*
300 F.R.D. 152 (S.D.N.Y. 2014) ......................................................................... 10

*Seila Law LLC v. CFPB,*
140 S. Ct. 2183 (2020) ................................................................................. 1, 2, 4, 7

*State Nat'l Bank of Big Spring v. Lew,*
197 F. Supp. 3d 177 (D.D.C. 2016) ....................................................................... 8

*Torres v. Toback, Bernstein & Reiss, LLP,*
278 F.R.D. 321 (E.D.N.Y. 2012) .................................................................... 12, 14

*United States v. Constr. Prods Research, Inc.,*
73 F.3d 464 (2d Cir. 1996) ................................................................................... 10

*United States v. Davis,*
131 F.R.D. 391 (S.D.N.Y. 1980) ......................................................................... 12

*United States v. Ghavami,*
882 F.Supp.2d 532 (S.D.N.Y. 2012) .................................................................... 11

*United States v. Legal Servs. for N.Y.C.,*
249 F.3d 1077 (D.C. Cir. 2001) ............................................................................. 9

*Wilkes-Barre Hosp. Co. v. NLRB,*
857 F.3d 364 (D.C. Cir. 2017) ........................................................................... 5, 8

**Statutes**

12 U.S.C. § 16 ......................................................................................................... 3

12 U.S.C. § 1815(d) ................................................................................................ 3

12 U.S.C. § 1820(e) ................................................................................................ 3

12 U.S.C. § 243 ....................................................................................................... 3

12 U.S.C. § 481 ....................................................................................................... 3

12 U.S.C. § 504 ........................................................................................................... 3

12 U.S.C. § 5481(19) ............................................................................................... 13

12 U.S.C. § 5491(c)(3) ............................................................................................... 1

12 U.S.C. § 5497(a) .................................................................................................... 2

12 U.S.C. § 5497(e) .................................................................................................... 2

12 U.S.C. § 5497(e)(4) ............................................................................................... 2

12 U.S.C. § 5517(e)(1) ............................................................................................. 12

12 U.S.C. § 5517(n)(2) ............................................................................................ 13

12 U.S.C. § 5561(5) ................................................................................................. 13

12 U.S.C. § 5562(c) .................................................................................... 6, 13, 15

12 U.S.C. § 5562(c)–(h) ............................................................................................ 8

12 U.S.C. § 5562(e) .................................................................................................... 6

12 U.S.C. § 5562(f) ..................................................................................................... 6

**Rules**

N.Y. R. of Prof'l Conduct 1.6(a) ............................................................................... 9

N.Y. R. of Prof'l Conduct 1.6(b)(6) ......................................................................... 9

Fed. R. Civ. P. 19(a) ................................................................................................ 16

**Regulations**

Ratification of Bureau Actions, 85 Fed. Reg. 41,330 (July 10, 2020) ....................... 7

## I.      Introduction

The arguments that Respondent Law Offices of Crystal Moroney (LOCM) makes in response to the Order to Show Cause are unavailing. LOCM's constitutional objections, including about ratification, do not warrant denying the Petition to Enforce the Civil Investigative Demand (CID). Further, LOCM's argument that the Bureau of Consumer Financial Protection (Bureau or CFPB) seeks materials protected by the attorney-client privilege or doctrines of confidentiality lacks merit. LOCM has never properly asserted privilege. And in any event, courts have consistently held that a law firm's debt collection activities are not covered by the attorney-client privilege and any confidentiality requirements applicable to LOCM do not preclude administrative subpoenas. Accordingly, the Court should find that LOCM failed to show cause, and order LOCM to comply with the CID.

## II.      There Is No Constitutional Impediment to Enforcing the CID.

### A. *Seila Law* Fully Resolved the Question of the Bureau's Constitutionality.

LOCM has spilled significant ink on the provision in the Consumer Financial Protection Act (CFPA) that states the Director may be removed only for "inefficiency, neglect of duty, or malfeasance in office." 12 U.S.C. § 5491(c)(3). But that provision no longer presents any impediment to enforcing the CID. As the Court is aware, the Supreme Court recently held that the removal provision (1) unconstitutionally impedes the President's authority under Article II, and (2) is severable from the rest of the CFPA. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020). The Court also made clear that now "[t]he agency may … continue to operate" with a Director "removable by the President at will." *Id.* at 2192.

Unfazed, LOCM shifts directly from complaining that the President lacks sufficient power over the Bureau to complaining that the President wields too much power over the

Bureau. In particular, LOCM argues that *Seila Law*, while purporting to remedy the constitutional problem with the Bureau's statute, in fact worsened the problem by allowing the President to oversee the Bureau's use of funds, which the Bureau by statute draws primarily from outside the annual appropriations process.[1] *See* Opp'n at 2–3, 18–19.

That suggestion is illogical on its face and contradicted by the Supreme Court's actual analysis in *Seila Law*. The Court was well aware of the Bureau's method of funding when it decided that case, and what it concluded was that such funding *increased* the need for the President to be able to remove the Director at will. *See Seila Law*, 140 S. Ct. at 2193–94, 2204 (describing the Bureau's source of funding and concluding that it "further aggravates the agency's threat to Presidential control"). That is the exact opposite of LOCM's view that the Constitution requires the Bureau's use of funds to remain insulated from presidential oversight.

At bottom, LOCM's objection appears to be with the Bureau's statutory funding mechanism itself. But LOCM has not explained just why that mechanism would offend the Constitution. It does not. Indeed, this Court has already held, in LOCM's related suit against the Bureau, that LOCM was unlikely to succeed on this argument. *See* Tr. of Hearing Denying Prelim. Inj. at 65–66, *LOCM v. CFPB*, No. 7:19-cv-11594-KMK (S.D.N.Y.), ECF No. 28-10.

LOCM claims the Bureau's funding violates the Appropriations Clause, which states that "[n]o Money shall be drawn from the Treasury but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. But the Appropriations Clause simply requires that "the payment of money from the Treasury must be authorized by a statute." *Off. of Pers. Mgmt. v.*

---

[1] Congress authorized the Bureau to draw funding from the earnings of the Federal Reserve System, up to a specified cap. 12 U.S.C. § 5497(a). To exceed that amount, the Bureau must obtain any additional funding through the ordinary appropriations process. *See id.* § 5497(e). Also, the Director must report annually to the House and Senate Appropriations Committees about the Bureau's financial operating plans and use of funds. *Id.* § 5497(e)(4).

*Richmond*, 496 U.S. 414, 424 (1990); *accord Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937) (the Clause "means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress"). Here, Congress authorized the Bureau's funding when it enacted the CFPA. And having done so, Congress remains free to change that method of funding at any time.

Nor is there anything unusual about Congress's choice to fund the Bureau primarily outside the annual appropriations process. It has done so for many other agencies, including the Office of the Comptroller of the Currency, an agency that, like the Bureau, is headed by a single person removable at will by the President. *See* 12 U.S.C. § 16; *see also, e.g.*, *id.* § 243 (Federal Reserve Board); *id.* §§ 1815(d), 1820(e) (FDIC). The Bureau is unaware of, and LOCM has not identified, any case holding that this commonplace method of agency funding is unconstitutional. To the contrary, it is well established that Congress may fund entities outside "the normal appropriations process" through multi-year appropriations or other funding mechanisms. *Am. Fed'n of Gov't Emps., AFL-CIO, Local 1647 v. FLRA*, 388 F.3d 405, 409 (3d Cir. 2004).

LOCM tries to distinguish the Bureau from some of these other agencies on various grounds, such as that the Bureau is not funded through fees generated by its own activities and that these other agencies "do not have broad investigative and enforcement authority." Opp'n at 16–17. It bears noting that a number of these supposed distinctions are, as a factual matter, incorrect. The Federal Reserve Board, to take just one example, does have broad investigative and enforcement authority, including the power to conduct on-site examinations of the banks under its purview and to impose hefty civil money penalties. *See* 12 U.S.C. §§ 481, 504. More to the point, none of the distinctions LOCM tries to draw have any bearing on the relevant question

3

under the Appropriations Clause: whether "the payment of money from the Treasury" has been "authorized by a statute." *Richmond*, 496 U.S. at 424. Plainly, the Bureau's funding has been.[2]

Fundamentally, LOCM's efforts to concoct a constitutional problem with the Bureau's statute are simply not tenable after *Seila Law*, which fully resolved the constitutionality of the Bureau's structure. Again, the Supreme Court was aware of the features of which LOCM complains when it decided that case. *See, e.g.*, *Seila Law*, 140 S. Ct. at 2193–94, 2204 (analyzing Bureau's statutory funding mechanism). The Court nonetheless made clear that its decision invalidating and severing the removal provision rendered the Bureau constitutional and left it free to "continue to operate" under a Director "removable by the President at will." *Id.* at 2192; *see also id.* at 2209 (Roberts, C.J.) (explaining that because "the Director's insulation from removal" was the "only constitutional defect" the Court "identified in the CFPB's structure," the constitutional problem "disappear[s]" once the Director is "removable at will by the President").

## B. The Director's Ratification Resolved Any Issue with the Filing of This Case.

After the decision in *Seila Law*, the Director ratified the decisions to issue the CID, to deny LOCM's administrative request to modify or set aside the CID, and to file a petition in court to enforce the CID. Decl. of Ratification, ECF No. 18-1. That ratification by an official fully accountable to the President resolves any constitutional problem with the filing of this case.

Drawing from established principles of agency law, courts have long recognized ratification as a remedy for an initial defect in government agency action, including the filing of

---

[2] At times, LOCM frames its quarrel with the Bureau's funding in terms of the non-delegation doctrine. Opp'n at 15. But this argument fails for the basic reason that LOCM has not explained what aspect of that funding mechanism it believes lacks an "intelligible principle to guide the [Bureau's] use of discretion." *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019); *cf. also Cincinnati Soap*, 301 U.S. at 321–22 (rejecting non-delegation challenge to appropriation that authorized spending of however much revenue was generated by a particular tax).

an enforcement suit. "Ratification occurs when a principal sanctions the prior actions of its purported agent." *Doolin Sec. Sav. Bank, F.S.B. v. Off. of Thrift Supervision*, 139 F.3d 203, 213 (D.C. Cir. 1998). Here, a principal (the Bureau), acting through a valid agent (a Director who is now removable at will), ratified a prior action taken by an agent (a Director who was removable only for cause) whose initial exercise of authority on behalf of the Bureau was in doubt. Such a ratification "remedie[s] the defect in [the] original issuance of the complaint." *Wilkes-Barre Hosp. Co. v. NLRB*, 857 F.3d 364, 372 (D.C. Cir. 2017).

In *CFPB v. Gordon*, for example, the Ninth Circuit applied these principles to reject a claim that a Bureau action had to be dismissed because it was initially approved by a Director who was appointed in violation of the Appointments Clause. 819 F.3d 1179 (9th Cir. 2016). The court held that "any initial Article II deficiencies" with the Bureau's filing of a suit when it was led by an improper recess appointee were "cure[d]" by "the subsequent valid appointment [of Director Cordray], coupled with Cordray's August 30, 2013 ratification." *Id.* at 1190–91.

So too, in *FEC v. Legi-Tech, Inc.*, the D.C. Circuit held that dismissing an enforcement action was "neither necessary nor appropriate" where the action was initially filed by an unconstitutionally structured agency but then ratified by that agency once the constitutional flaw was corrected. 75 F.3d 704, 708 (D.C. Cir. 1996). The Federal Election Commission (FEC) filed suit against Legi-Tech at a time when the agency's leadership included two *ex officio* congressional members. *Id.* at 706). After the D.C. Circuit held in a different case that the inclusion of these members was unconstitutional,[3] a "reconstitute[d]" Commission, which now

---

[3] LOCM focuses solely on *FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993), in which the court held unconstitutional the FEC's structure and, being "aware of no theory" that would allow it to do otherwise, reversed the judgment in favor of the FEC. *Id.* at 828. But that case, unlike this one, involved a law enforcement action that was never ratified by a properly

excluded the congressional members, re-approved the suit against Legi-Tech. *Id*). The court held that, rather than dismissing that action, "the better course" was to treat "the FEC's post-reconstitution ratification … as an adequate remedy" for the problem at the time the suit was filed. *Id.* at 709).

Here, the Bureau Director has formally and expressly ratified the CID and this enforcement suit after considering the bases for those actions. That ratification cured any initial Article II deficiencies created by the former operation of the statutory removal restriction. Just as in *Gordon*, notwithstanding any constitutional defect in the initial bringing of this suit, the Bureau has at all times had the statutory authority to issue CIDs, 12 U.S.C. § 5562(c), modify or set them aside, *id.* § 5562(f), and petition to enforce them in court, *id.* § 5562(e). *Cf. Gordon*, 819 F.3d at 1192 (noting that under the CFPA, "the CFPB had the authority to bring the action at the time Gordon was charged"). And just as in *Legi-Tech*, dismissal of this action would be "neither necessary nor appropriate" now that the constitutional problem has been remedied and this action ratified. 75 F.3d at 708.

LOCM raises several arguments why the approval of the CID by an official removable at will by the President does not resolve its objection that the CID was not (and seemingly could not have been) approved by such an official at the outset. Its arguments fall short.

First, LOCM complains that to enforce the CID would deprive it of "*any* remedy." Opp'n at 20–21 & n.26. Not so. LOCM objected that the Bureau's decision to pursue the CID was unconstitutionally insulated from Presidential control. That objection was fully remediated by the Supreme Court's decision invalidating the removal provision and the Director's subsequent

---

constituted agency. When the same court (indeed, the same judge) considered an action that *had* been ratified, in *Legi-Tech*, it held that dismissal was not appropriate. 75 F.3d at 708.

affirmation, while she was fully accountable to the President, that the CID should be enforced. *Cf. Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2355 (2020) (proper remedy for plaintiffs' First Amendment challenge to ban on robocalls was to invalidate and sever an unconstitutional exception to the ban for government debt-collection, notwithstanding that plaintiffs' preferred relief would have been no ban at all). The fact that LOCM would have preferred not to have to provide information about its business operations in response to the CID hardly means it has been denied an appropriate remedy.[4]

Second, LOCM claims that the only principal who could validly ratify the CID is the President himself. In support of this implausible suggestion, LOCM points to language in *Seila Law* stating that the President is head of the executive branch. Opp'n at 22. Yet it is also the case that, "because it would be impossible for one man to perform all the great business of the State, the Constitution assumes that lesser executive officers will assist the supreme Magistrate in discharging the duties of his trust." *Seila Law*, 140 S. Ct. at 2197 (internal brackets and quotation marks omitted). It was no more necessary that the President personally ratify this CID than it would be for him to approve the issuance of a CID in the first place.

Third, LOCM disputes the ratification on the basis that it took place before the Director formally ratified the Bureau's prior rulemakings. Opp'n at 23–25; *see also* Ratification of Bureau Actions, 85 Fed. Reg. 41,330 (July 10, 2020) (ratifying the large majority of the Bureau's existing regulations). But the Bureau's authority to issue and enforce CIDs comes directly from

---

[4] LOCM's reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2018), is misplaced. *See* Opp'n at 21. After holding that the ALJ who presided over Lucia's hearing had not been constitutionally appointed, the Court held that Lucia was entitled to a new hearing before a properly appointed official. *Id.* at 2055. Here, of course, the "hearing" is not at issue because it is being conducted by this Court. What has been called into question by LOCM is the Bureau's decision to pursue the CID. Thus, all LOCM is entitled to is a new decision by a properly accountable official on whether the CID should be pursued. LOCM has now received exactly that.

the CFPA itself rather than any Bureau regulation. *See* 12 U.S.C. § 5562(c)–(h). There was thus no need for the Director to formally ratify any particular regulation before approving the CID.

Finally, LOCM claims that the ratification was ineffective because it was not based on a "detached and considered judgment." Opp'n at 25–27. But the Director's declaration establishes that she considered the basis for each of the Bureau's relevant decisions with respect to this CID and expressly affirmed that the CID should be enforced. That is all that was required. *Cf. Wilkes-Barre Hosp. Co.*, 857 F.3d at 371–72 (upholding blanket ratification by agency official of all his prior actions); *Gordon*, 819 F.3d at 1190–92 (similar); *Legi-Tech*, 75 F.3d at 709 (upholding ratification that court concluded "may well" have been little more than a "rubberstamp"). Indeed, courts "have consistently declined to impose formalistic procedural requirements before a ratification is deemed to be effective." *State Nat'l Bank of Big Spring v. Lew*, 197 F. Supp. 3d 177, 184 (D.D.C. 2016); *see also Advanced Disposal Servs. East, Inc. v. NLRB*, 820 F.3d 592, 603 (3d Cir. 2016) ("[A]s an equitable remedy, ratification has been applied flexibly and has often been adapted to deal with unique and unusual circumstances.").

LOCM attempts to dispute the Director's sworn declaration, and to overcome the presumption of regularity that would attach to such a representation even if it had not been offered under penalty of perjury, *see Advanced Disposal*, 820 F.3d at 604, by complaining that it was issued not long after *Seila Law* was decided. Opp'n at 26. Although the declaration stands on its own, the Bureau notes that it would hardly have been unreasonable for the Director and the Bureau to prioritize review of those matters, such as this one, with impending litigation deadlines. LOCM cannot turn the Bureau's prompt action and notice to LOCM and the Court into a reason to ignore the Director's ratification.

### III.    The Attorney-Client Privilege Does Not Preclude Enforcement of the CID.

LOCM contends that enforcement of the CID is precluded because the Bureau seeks "client documents and information which Respondent, an attorney, has an ethical obligation to keep confidential," "material related to [LOCM's] contact with its clients," and "an expansive number of documents that [LOCM[ is duty-bound to keep confidential." Opp'n at 29, 31. To reach this conclusion, LOCM appears to rely on New York Rule of Professional Conduct 1.6, which prohibits a lawyer from knowingly revealing confidential information (a broader category than what is covered by attorney-client privilege) obtained during the representation of a client. *See* N.Y. R. of Prof'l Conduct 1.6(a). LOCM indicates that it previously relied on Rule 1.6 to withhold information responsive to the June 2017 CID (2017 CID) and repeatedly relies on a duty of confidentiality as a basis for this Court to deny enforcement of this CID.

But as LOCM appears to concede, an order to comply from this Court would fall under the exceptions to Rule 1.6. *See* Opp'n at 10; *see, also*, N.Y. R. of Prof'l Conduct 1.6(b)(6) (permitting disclosures of confidential information "to comply with other law or court order."); *In re Alghanim*, 2018 WL 2356660, at *5 (S.D.N.Y. May 9, 2018) (enforcing the subpoena and holding that the firm's "production will not run afoul of Rule 1.6 because it is required by an Order of this Court"). Moreover, courts have consistently held that Rule 1.6 cannot be invoked to avoid compliance with an administrative subpoena. *See e.g., United States v. Legal Servs. for N.Y.C.*, 249 F.3d 1077, 1083 (D.C. Cir. 2001) (Rule 1.6 did not prevent an Inspector General from obtaining client names pursuant to a subpoena).[5]

---

[5] Courts likewise have held that a subpoena issued in litigation falls within the Rule 1.6 exceptions. *S.E.C. v. Sassano*, 274 F.R.D. 495, 497 (S.D.N.Y. 2011) (agency subpoena issued pursuant to Fed. R. Civ. P. 45 was "law" that satisfied exception to confidentiality requirement of Rule 1.6); *see also F.T.C. v. Trudeau*, WL 842599 at *4 (N.D. Ill. Mar. 6, 2013) (rejecting law

LOCM's contention that the CID cannot be enforced thus rests entirely on its blanket assertion of the attorney-client privilege. But that blanket assertion of privilege is not a basis for denying enforcement of the CID. *See, e.g., United States v. Constr. Prods Research, Inc.*, 73 F.3d 464, 474 (2d Cir. 1996) (upholding the enforcement of administrative subpoena challenged on an assertion of the attorney-client privilege for failure to provide an adequate privilege log); *In re Christensen*, 2006 WL 278169, at *2 (S.D.N.Y. Feb. 3, 2006) (enforcing lion's share of litigation subpoena notwithstanding blanket assertions of privilege). Rather, Bureau regulations require LOCM to assert any applicable privileges by furnishing a privilege log. *See* 12 C.F.R. § 1080.8. LOCM has not done so here.[6]

Nor can LOCM meet its burden for asserting the attorney-client privilege. It is well-settled in this jurisdiction that a party asserting the attorney-client privilege must demonstrate that "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client, (b) without the presence of strangers, (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client." *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 161 (S.D.N.Y. 2014) (citing *United States v. Davis*, 131 F.R.D. 391, 398 (S.D.N.Y.1990)); *see also United States v. Ghavami*, 882 F.Supp.2d 532, 536

___

firm's argument that Rule 1.6 precluded compliance with Federal Trade Commission subpoena issued pursuant to Fed. R. Civ. P. 45).

[6] LOCM concedes that the only privilege log it has provided the Bureau was in response to the 2017 CID. *See* Opp'n at 11; *see also* Ronald Canter Ltr., ECF No. 19-3.

(S.D.N.Y. 2012) ("It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, a burden not discharged by mere conclusory or ipse dixit assertions." (citing *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224–25 (2d Cir.1984) (citations and internal quotation marks omitted))).

The information sought by the CID does not implicate the attorney-client privilege; it does not reflect communications by clients (or purported clients) seeking an "opinion of law," "legal services," or "assistance in some legal proceeding" from LOCM. Instead, the CID requests information concerning the operations of LOCM's debt collection business, the names of the companies for which it collects debts, consumer disputes and complaints, written and oral communications with consumers from which it has sought to collect debts, information about its debt collection database systems, LOCM's collections and credit reporting policies and procedures, debt collection telephone scripts, templates and models of documents for communicating with consumers about debt collection, recordings of debt collection calls, and consumer account information associated with such recordings. *See, generally,* Am. Pet. Ex. A, ECF No. 6-3. LOCM's claim that it had attorney-client communications with the debtors from whom it was seeking to collect is facially absurd.

The caselaw is clear that attorneys' debt collection activities are not afforded attorney-client protections. "'Where the attorney acts as a … collection agent … the communications between him and his client are not protected by the privilege.'" *Avoletta v. Danforth*, 2012 WL 3113151, at *2 (D. Conn. July 31, 2012) (citations omitted); *see also Khan v. Midland Funding LLC*, 956 F. Supp. 2d 515, 516-17 (S.D.N.Y. 2013) (rejecting claim that firm manuals regarding collection practices and procedures were privileged); *Torres v. Toback, Bernstein & Reiss, LLP*,

11

278 F.R.D. 321, 322 (E.D.N.Y. 2012) (holding that firm's retainer agreements with clients and letters to clients requesting information about the debtors could "hardly be considered confidential.").

Nor can LOCM protect otherwise non-privileged documents merely because it is a law firm. A document in the possession of a lawyer is not automatically afforded the attorney-client privilege's protections. "Documents obtain no special protection because they are housed in a law firm; '[a]ny other rule would permit a person to prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney.'" *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 171 (2d Cir. 2003) (citing *Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962)); *see also United States v. Davis*, 131 F.R.D. 391, 402 (S.D.N.Y. 1980) ("[I]n-house counsel's law degree and office are not to be used to create a privileged sanctuary for corporate records.").

Having failed to articulate why any of the responsive information is protected from disclosure by the attorney-client privilege, LOCM instead urges the Court to adopt an unprecedented interpretation of the CFPA that would categorically exempt LOCM from the Bureau's oversight of consumer debt collection and furnishing of credit information. LOCM states that it should not be subject to any Bureau CIDs as a law firm, due to the "practice-of-law exclusion" in the CFPA, which generally exempts from the Bureau's enforcement authority "activity engaged in by any attorney as part of the practice of law. . . ." 12 U.S.C. § 5517(e)(1).

LOCM's argument is contrary to the CFPA's text. Even assuming the "practice-of-law" exclusion applied to LOCM's practices, the CFPA makes clear that LOCM would still be required to comply with a Bureau CID. Any person "subject to or described in" the practice-of-law exclusion remains "subject to requests from, or requirements imposed by, the Bureau

regarding information in order to carry out the responsibilities and functions of the Bureau…." 12 U.S.C. § 5517(n)(2).[7] The Bureau is authorized to issue a CID to "any person" it has reason to believe "may be in possession, custody, or control of" evidence "relevant to a violation" of federal consumer financial law. 12 U.S.C. §§ 5562(c), 5561(5). LOCM is a "person," *id.* § 5481(19), that by its own admission "collects debt and furnishes consumer information to reporting agencies in the ordinary course of business." Opp'n at 9. Nothing in the Bureau's organic statute prohibits it from issuing a CID to such a firm. Indeed, LOCM itself acknowledges that the Bureau *can* "demand of an attorney, whose services implicate one of the 19 statutes administered by CFPB, or who may engage in unfair or deceptive collection practices, documents and information related to his or her engagement with financial consumers." Opp'n at 29.

Despite this acknowledgment, LOCM has refused to produce *any* materials in response to the CID, including call recordings with consumers and associated metadata, consumer disputes and complaints, and templates of its communications with consumers, such as debt collection telephone scripts. *See, e.g.*, Am. Pet. Ex. A (Req. for Written Reports No. 2; Req. for Docs. Nos. 2, 8–11; Req. for Tangible Things Nos. 1-4), ECF No. 6-3. LOCM has also refused to identify its clients even though, as explained above, neither the names of the companies on whose behalf LOCM collects debt nor its agreements with those companies is shielded from disclosure. *See Avoletta*, 2012 WL 3113151, at *2; *Torres*, 278 F.R.D. at 322; *e.g.*, Am. Pet. Ex. B (Interrog.

---

[7] Paragraph 3 of the practice-of-law exclusion, titled "Existing Authority," also states that the exclusion "shall not be construed so as to limit the authority of the Bureau with respect to any attorney, to the extent that such attorney is otherwise subject to … the enumerated consumer laws" of the CFPA. *Id.* § 5517(e)(3). Here, the Bureau's CID seeks information about possible violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq*. and the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq.*, laws to which LOCM is subject, and that are enumerated consumer laws under 12 U.S.C. § 5481(12).

No. 12, Req. for Written Reports No. 1; Req. for Docs Nos. 2; Req. for Docs. No. 2), ECF No. 6-4.  There is thus no support for LOCM's argument that the CFPA precludes enforcement of the CID (or its blanket assertion of the attorney-client privilege). The Court should order LOCM to comply in full with the CID.

## IV.   LOCM's Partial Response to the 2017 CID Does Not Preclude Enforcement of this CID.

LOCM contends that the entire CID is unenforceable because it "substantially complied with the First CID" by making a partial production spanning "thousands of pages" in response to the 2017 CID, and thus, information responsive to the CID is in the Bureau's possession. *See* Opp'n at 10, 32; *see*, *id*. at 4, 10, 31. This is a mischaracterization of the record. LOCM previously identified approximately 1,793 pages of materials as responsive to the 2017 CID. [8] *See* Second Assae-Bille Decl. ¶ 5, ECF No. 25-1. It then clawed back or heavily redacted significant amounts of material, because it would reveal "the identity of consumers which would provide information leading to the identity of LOCM's clients." *See* Opp'n Ex. C, ECF No. 19-3. LOCM also withheld responses to at least 15 requests, *see* Opp'n at 10, including at least 144 "letters of dispute" that it deemed responsive to the Bureau's request for legal actions and administrative proceedings filed against LOCM or its principals relating to the company's debt or information furnishing activities. *See* Opp'n Ex. C at 3–17, ECF No. 19-3; Second Assae-Bille Decl. ¶ 9, ECF No. 25-1; *see also* Am. Pet. Ex. B (Req. for Written Reports No. 5), ECF No. 6-4.

LOCM's prior production also suffered from significant deficiencies. LOCM provided the majority of its production in a non-native format that failed to comply with the Bureau's

---

[8] Approximately 1,150 of those 1,793 pages comprised data dictionary tables that were duplicative of Excel spreadsheets LOCM also produced. *See* Second Assae-Bille Decl. ¶ 6–8, ECF No. 25-1; Am. Pet. Ex. B (Req. for Written Reports No. 18), ECF No. 6-4.

formatting standards. *See* Opp'n at 11; Am. Pet. Ex. B ("Civil Investigative Demand Document

Submission Standards"), ECF No. 6-4; *see also* Am. Pet. Ex. D at 5, ECF No. 6-6 ("Such

standards exist not as mere formalities but to ensure that the Bureau receives the information

necessary to carry out its statutory responsibility to investigate potential violations of federal

consumer financial law."). Moreover, LOCM did not certify as accurate and complete any of the

production it made in response to the 2017 CID. And though LOCM qualifies this as a "minor

procedural issue," *see* Opp'n at 32–33, these under-oath declarations are essential to the

Bureau's assessment of whether it can rely on the information obtained, and are mandated by the

CFPA. *See* 12 U.S.C. § 5562(c)(10)-(12).

LOCM's claim of unenforceability also assumes that if its prior production could be

deemed complete at the time of submission—and it was not—then it must necessarily be deemed

a complete response to substantially similar requests in this CID. This is an unwarranted leap.

For instance, the Applicable Period in this CID ends later in time than in the 2017 CID, making it

impossible for certain prior responses to be complete without revision or supplementation. *E.g.*,

Am. Pet. Ex. A (Interrogs. Nos. 1, 3, 4, 13, 18), ECF No. 6-3. Information that changed or was

generated after LOCM's productions in response to the 2017 CID is plainly not in the Bureau's

possession.

## V.      Rule 19 Is Inapplicable to This Proceeding, and In Any Event, FedChex Is Not a Necessary Party to this Action.

Finally, LOCM contends that enforcement of the CID must be denied because the Bureau

failed to join FedChex Recovery, LLC (FedChex), a company on whose behalf LOCM collects

debts, to this action pursuant to Federal Rule of Civil Procedure 19. Rule 19(a)(2)(A) requires

joining a person where the court would not be able grant complete relief in their absence or,

under Rule 19(a)(1)(B), where failure to join a person with a legally protected interest in the

15

subject of the action may (1) impair or impede the person from protecting such interests, or (2) risk incurring multiple or inconsistent obligations. *See* Fed. R. Civ. P. 19(a).

LOCM cites no case law supporting the application of Rule 19 to a miscellaneous proceeding to enforce an administrative CID. But even assuming that Rule 19 applies to this proceeding, LOCM has failed to establish that FedChex is a necessary party. As established in Section III of this Reply, the CID does not in fact request information protected by the attorney-client privilege. And even if it did, LOCM can assert the attorney-client privilege on behalf of FedChex. *See Application of Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997) (the attorney-client privilege can be asserted by the client or by "one authorized to do so on the client's behalf"). To the extent LOCM has not properly asserted the attorney-client privilege, this failure is not a basis for joining FedChex so that it may attempt to do so. In any event, the Court need not reach this question because LOCM is amply situated to raise any issues of privilege and confidentiality. The Court should therefore deny LOCM's request to join FedChex pursuant to Rule 19.

## CONCLUSION

For the foregoing reasons, the Court should order LOCM to comply with the CID.

Dated: July 29, 2020                    Respectfully submitted,


                                        THOMAS G. WARD
                                        Enforcement Director

                                        DEBORAH MORRIS
                                        Deputy Enforcement Director

                                        ALUSHEYI WHEELER
                                        Assistant Deputy Enforcement Director

                                        /s/ E. Vanessa Assae- Bille
                                        E. VANESSA ASSAE-BILLE (NY Bar #5165501)

                                        JEHAN A. PATTERSON (JA8306)
                                        KEVIN E. FRIEDL (NY Bar #5240080)

                                        Bureau of Consumer Financial Protection
                                        1700 G Street NW
                                        Washington, D.C. 20552
                                        Email: elisabeth.assae-bille@cfpb.gov
                                        Tel: 202-435-7688

                                        *Attorneys for Petitioner*
                                        *Bureau of Consumer Financial Protection*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the

United States Court of the Southern District of New York on July 29, 2020, by using the

CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will

be accomplished by the CM/ECF system.

Dated: July 29, 2020          /s/ E. Vanessa Assae-Bille

E. Vanessa Assae-Bille
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, D.C. 20552
Email: elisabeth.assae-bille@cfpb.gov
Tel: 202-435-7688